LOTTINGER, Judge.
This matter is before us on an appeal taken by the plaintiff from a judgment of *424 the lower court which dismissed his demand for damages arising out of an accident which occurred in the Parish of Lafourche at about 10:30 P. M. on the night of April 9, 1959, when he was struck by an automobile owned and driven by defendant Harris J. Guidry, Jr. It is alleged in the petition that just previous to the accident petitioner was walking on his left edge of Louisiana Highway No. 24 proceeding in an easterly direction and that he was struck from the rear by defendant Guidry who lost control of his car while traveling in the same direction. The defendants’ version of the accident is that the accident occurred when plaintiff, who was in a drunken condition, either jumped, walked or ran into Guidry’s automobile as the latter tried to swerve to go around him.
The trial judge arrived at certain factual conclusions which are amply substantiated by the record and from which we quote in part as follows:
“At the time of this accident, there is not any doubt about the condition of the plaintiff. He was drunk. The State Trooper, who investigated this case, states without hesitation that the plaintiff was intoxicated.
“The plaintiff was a large man. He is very dark. On the night of the accident, he was hatless. His hair is dark. He wore a gray shirt and dungarees. The night was dark. The road is a dark colored blacktop. The ability to see this man at a great distance was seriously impaired by these various facts. There are statements in this record that the plaintiff was visible in the headlights of the Guidry automobile some two acres up, but as stated by plaintiff in his brief, these varying distances ‘being their estimate of the range of the headlights.’ The testimony, when properly analyzed, means that and nothing more. It was intended by the testimony to mean, and the Court accepts it as being, that the man was visible as soon as he came within the headlights.
“When the plaintiff did come within view, the defendant, who was traveling forty or forty-five miles per hour, then did all that he could to avoid the accident. He started slowing his car and he started to swerve. When the plaintiff moved in the direction of blocking the car, the defendant tried to pull in the other direction. The defendant succeeded in stopping his automobile within one car length of the point of impact. The right front headlight of the automobile first hit Mr. Dardar. He then slid over the hood into the extreme right part of the car’s windshield and stayed on the road immediately next to the right rear side of the stopped car.
“Immediately following the accident, the plaintiff was lying in the middle of the road with the defendant’s car in its left lane of traffic immediately next to the center line of the road.
“In addition to the testimony of the three adult occupants of the Guidry automobile as to the location of plaintiff and the Guidry car after the accident, there is the testimony of a Nolan Billiot, the driver of the first automobile arriving at the scene following the accident. He says that he had other people in his car with him, but that they did not get out of the car. Billiot says that he and his people were not within range of the accident and saw nothing except after it was over.
“Plaintiff pleaded and testified that he was struck in the back while walking on the extreme left side of the highway going in the same direction as the defendant’s automobile was traveling. Aside from the testimony to the contrary, the physical facts appear to *425 make the plaintiff’s version improbable. Normally, one would expect the left portion of the automobile to have been completely off of the highway in a ditch to have struck Mr. Dardar where he contends he was walking in order to first contact him with the right hand side of the car. Mr. Dardar admits having seen the headlights of the automobile for quite some distance away. How he could have known that the car was a great distance away when he first saw the headlights is rather difficult to comprehend, unless he saw the lights. If he saw the lights and continued to see them, then it is impossible for the car to have hit him in the back, that is, unless he turned immediately before the impact.
“The three young occupants of the Guidry automobile explained how the accident happened. Their explanation is straightforward, without hesitation, and acceptable to the Court. Suddenly, in front of them they saw this large, dark man standing in the middle of the road facing them, waving his arms in an obvious attempt to stop the car. From the viewpoint of the driver, he did what he could think of doing in the short space of time allowed to react. He started stopping and tried to pull out of the man’s way. Still facing the automobile and wildly waving his arms, the plaintiff moved over in front of the automobile. The driver, still trying to stop, swerved again and possibly even a third time, with the plaintiff standing in the road facing the automobile trying to wave it to a stop.”
After arriving at the above quoted conclusions of fact, the trial judge made certain other observations with which we are likewise in accord. They are:
“Assuming that it is the duty of a young person, with his young wife, young sister-in-law and infant baby in his car, to come to a stop or immediately without hesitation decide to come to a stop, under such circumstances, the Court finds as a matter of fact and believes that young Mr. Guidry did all that was expected of him to avoid this accident. The court believes that Mr. Guidry promptly reacted toward trying to stop and to avoid hitting the plaintiff. If, however, it should be decided that Mr. Guidry hesitated a moment longer than he would have had it been an easily visible person and in a neighborhood more amenable to proper acting people, then this Court believes that Mr. Gui-dry is not to be held accountable for his moment of hesitation. On this lonely, black road, there are some small places of business that should not be attractive to young people such as the occupants of this automobile.”
In spite of the foregoing plaintiff nevertheless argues that he should have judgment under the doctrine of last clear chance. The doctrine is without application here. When Guidry first saw plaintiff, at a distance sufficiently far to enable him to stop, plaintiff was not then in a position of peril such as to require that Guidry stop his car. When plaintiff did begin to move and swerve in the road, Guidry did all within his power to avoid the accident and though he was almost able to bring his car to a stop it was then too late.
For the reasons assigned the judgment of the lower court is affirmed.
Judgment affirmed.