162 So.2d 842 (1964)
William O. EUBANKS et al., Plaintiffs and Appellees-Appellants,
v.
Thomas M. WILSON, Jr., et al., Defendants and Appellants-Appellees.
No. 1091.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1964.
Rehearing Denied April 28, 1964.
*843 Falkenheiner & Calhoun, by W. C. Falkenheiner, Vidalia, Love & Hodges, by Lloyd F. Love, Ferriday, for defendants-appellants.
Sanders & Long, Winnfield, by Lewis R. Sleeth, Jena, Martin S. Sanders, Jr., Winnfield, Gist, Murchison & Gist, by DeWitt T. Methvin, Jr., Alexandria, for plaintiffs-appellees.
Before CULPEPPER, TATE and HOOD, JJ.
HOOD, Judge.
This action for damages, based largely on personal injuries alleged to have been sustained by plaintiffs as a result of a motor vehicle collision, was instituted by William O. Eubanks, individually and as administrator of the estate of his minor child, Gloria Nell Eubanks, and by his wife, Mrs. Pearl Stutson Eubanks. The defendants are Thomas M. Wilson, Jr., and his public liability insurer, American Indemnity Company. The defendants answered denying liability and specially pleading contributory negligence, and defendant Wilson also filed a reconventional demand against Eubanks. After trial on the merits, judgment was rendered in favor of Mr. Eubanks, individually, for the principal sum of $6,500.00, but his demands in behalf of his minor daughter and the demands of Mrs. Eubanks were rejected. The defendants appealed from that portion of the judgment which was in favor of Mr. Eubanks, and the latter has answered that appeal seeking an increase in the award. Mr. Eubanks, as administrator of the estate of his daughter, and Mrs. Eubanks have appealed from the judgment rejecting their demands.
The evidence establishes that at about 7:15 p. m. on December 20, 1960, plaintiff Eubanks was driving his 1956 Chevrolet pickup truck in a northerly direction on a blacktopped highway in Catahoula Parish, Louisiana. In the cab of the truck with him were his wife and three children, one of the children being his 16-year-old daughter, Gloria Nell Eubanks. When he was about two miles north of Jonesville, Mr. Eubanks experienced mechanical difficulty with his truck, in that the motor suddenly stopped operating and the truck came to a stop. Immediately after the vehicle came to a stop Eubanks dimmed his headlights, obtained a flashlight from inside the cab, alighted from the truck, walked to the front of the vehicle and opened up the hood to find the trouble and to repair it. Shortly after he had raised the hood, the rear of his truck was struck by an automobile owned and being driven in a northerly direction by defendant Wilson. Plaintiffs sustained personal injuries as a result of this collision.
The highway at the place where this accident occurred is straight and level. The blacktopped slab is 20 feet wide, with shoulders about three or four feet wide on either side of this slab. The fill at that point is such that the surface of the highway is eight or ten feet higher than the land on either side of it. It was dark at the time the accident occurred, and although it was cloudy, there was no fog, smoke or rain, *844 and visibility was good. Plaintiff's truck was equipped with headlights and with one red taillight, the taillight being located on the left rear part of the truck, and all of these lights on the truck were burning at the time the accident occurred. The Wilson car was equipped with properly functioning headlights, and they also were burning at the time of the collision.
Although there is a conflict in the testimony, we conclude that at the time the accident occurred the Eubanks truck was parked partially on the east shoulder of the highway, with the left side of his truck extending about four or five feet onto the east or northbound traffic lane on the blacktopped slab. The shoulders were very narrow at that point, and we are convinced that Eubanks pulled his truck about as far off the hardsurfaced portion of the highway as he could safely drive it, before bringing it to a stop. In spite of his effort to get the truck off the hardsurfaced portion of the highway, however, a portion of the east or northbound lane of traffic was obstructed by that vehicle.
Immediately prior to the collision defendant Wilson was driving at a speed of about 55 miles per hour, which was within the 60 mile per hour speed limit. He met two vehicles which were being driven in a southerly direction, and he dimmed his headlights for each. After passing the first car he put his lights on bright and then for the first time he observed the stalled truck from 75 to 100 yards ahead of him. He assumed the truck was moving, but he nevertheless began slowing down. A moment later he realized that the truck was stopped, so he applied his brakes with some force but was unable to avoid a collision. He met and passed the second oncoming southbound vehicle about the time of the collision, and he explains that this second oncoming car in the southbound lane of traffic prevented him from veering to his left and passing on the left side of the parked truck. Wilson states that although he saw the truck when he was 75 to 100 yards from it, he did not see the burning taillight at any time before the collision, although he noticed after the accident had occurred that the truck's taillight was still on.
The law is settled that a motorist is held to have seen an object which, by the use of ordinary care and prudence, he should have seen in time to avoid running into it, and the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that in which he could stop within the range of his vision. He does not have the right to assume that his course of travel is free from danger or obstruction in the absence of his ability to see clearly ahead, and if he continues to travel as if he knew there was perfect clearance ahead, he does so at his own risk and peril. See Lewis v. Quebedeaux, La. App. 3 Cir., 134 So.2d 93 (Cert. denied), and cases therein cited.
Exceptions to this general rule have been made in a number of cases where, because of the unusual and extraordinary circumstances which were found to exist in those particular cases, the driver of the moving vehicle was held to be free from actionable negligence in colliding with a stationary object on the road ahead of him. See Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377; Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So. 2d 720; Vowell v. Manufacturers Casualty Insurance Company, 229 La. 798, 86 So.2d 909; and Suire v. Winters, 233 La. 585, 97 So.2d 404.
The trial judge, consistent with the general principle of law hereinabove first stated, concluded that defendant Wilson was negligent in failing to observe the taillight of the truck before colliding with it, in driving at a speed greater than that in which he could stop within the range of his vision, and in failing to bring his automobile to a stop in time to avoid a collision after he saw or should have seen that the Eubanks vehicle was stalled in the highway ahead of him. Wilson's negligence in those *845 particulars was found to be the proximate cause of the accident.
Defendants, in arguing that the trial court erred, contend that the above-stated general rule is not applicable and that Wilson should be decreed to be free from negligence because of the unusual and extraordinary circumstances which existed at the time of the accident. They point out that Wilson was driving at a lawful rate of speed immediately before the collision occurred, that he had no reason to anticipate the presence of a stalled truck on the highway and that he was keeping a proper vigil. Wilson testified that the taillight of the Eubanks truck was somewhat obscured by mud or dust at the time of the accident, and it is argued that this made the truck more difficult to observe. Defendants also argue that Wilson was required by law to dim his headlights as he met an approaching vehicle, and that his compliance with this legal requirement was one of the circumstances which prevented him from observing the stalled truck sooner than he did. It is argued that Wilson became aware of the danger as soon as he could reasonably be expected to do so under the circumstances, and that after he became aware of it he did everything reasonably within his power to avoid a collision, but without success. These are the circumstances which defendants contend are so unusual or extraordinary as to relieve Wilson from negligence and liability in this case.
As pointed out by defendants, Wilson testified that the taillight of the Eubanks truck was "mudded over, or dusted over" at the time of the accident, and that he called that fact to the attention of the state trooper who investigated the accident. His testimony to that effect, however, is not supported by that of the state trooper. The evidence shows that the taillight was burning immediately before and at the time of the accident, and since the trooper apparently found nothing wrong with it, we conclude that the taillight was visible for the distance required by law. LSA-R.S. 32:313.
Wilson obviously did not anticipate coming upon a stalled vehicle on the highway, but we think there is nothing so unusual or extraordinary about finding a disabled pickup truck on a highway as to relieve Wilson from negligence and liability for colliding with it, particularly where the highway is straight and level, visibility is good and the lights of the stalled truck were burning at the time of the collision. While it is true that Wilson was required to dim his headlights as he met the approaching vehicle, the law also requires that he reduce his speed or maintain such control over his vehicle while his lights are dimmed that he can bring his vehicle to a stop within the range of his vision.
We agree with the trial judge that Wilson was negligent in failing to observe the stalled truck in time to avoid running into it or in driving at a greater speed than that in which he could stop within the range of his vision. We also agree that Wilson's negligence in these particulars was a proximate cause of the accident.
We now turn to the question of whether plaintiffs are barred from recovery by their own contributory negligence. Defendants contend that Mr. Eubanks was negligent in dimming the headlights of his truck after that vehicle stopped, their argument being that in doing so he made the space illuminated in front of the truck smaller and thus he made the truck harder to observe from the rear. They also contend that all of the occupants of the Eubanks truck were negligent in failing to give some warning to approaching motorists, and particularly to defendant Wilson, of the danger created by the stalled truck. They contend that adequate warnings could have been given by having some of the occupants of the truck station themselves on the road in front of and behind the truck to flag oncoming traffic, the flashlight could have been used by plaintiff to warn Wilson, or the brake pedal could have been manipulated or the main light switch could have been used to cause the taillight to blink off *846 and on, thus calling attention to the danger. The failure to employ any of these possible means of warning the defendant, they contend, constitutes contributory negligence barring plaintiffs from recovery.
We cannot agree with defendants that the dimming of the headlights of the Eubanks truck made that truck more difficult to see from the rear. If the dimming of the headlights did have that effect, then we think the difference in visibility was so slight that it cannot relieve Wilson from negligence in failing to timely observe the stalled truck.
Under the provisions of LSA-R.S. 32:141(B) the driver of a disabled vehicle is required to "remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic."
As pointed out by counsel for defendants, we have held on at least two occasions that the plaintiff's negligent failure to remove his disabled vehicle from the traveled lanes of the highway as soon as possible, and especially to protect traffic approaching from his rear, by adequate lights and signals, was a proximate cause of the accident barring him from recovery. Fontenot v. LaFleur, La.App., 3 Cir., 124 So.2d 207 (Cert. denied); and Lewis v. Quebedeaux, supra. In each, of those cases, however, we found that the plaintiffs had had the means and ample time within which to remove the disabled vehicle from the highway after it had stopped and that they had failed to do so.
In the instant suit the evidence shows that because of the narrow shoulders and the steep embankment plaintiff's could not have removed the truck from the highway without some additional assistance, even if they had a considerable amount of time within which to do so. The remaining question, therefore, is whether they had sufficient time within which to warn approaching traffic of the danger, and whether they were negligent in failing to protect traffic.
The testimony of the occupants of the Eubanks truck is uncontradicted to the effect that the collision occurred very shortly after the truck stopped. According to their statements, Mr. Eubanks alighted from the truck as soon as it stopped, and the accident occurred immediately after he reached the front of the truck and had opened the hood. Defendants, in arguing that plaintiffs did have time to effectively warn approaching motorists, point out that according to Mr. Eubanks' own testimony he saw no vehicles approaching from either direction when he alighted from the truck, yet enough time elapsed between the stalling of the truck and the collision for defendant's car to approach from the rear and for one or two other vehicles to approach from the opposite direction.
Wilson was driving at a speed of 55 miles per hour prior to the accident. At that speed it required only a little more than one minute for him to travel a distance of one mile. Although the evidence does not show how far the headlights of the Wilson car should have been visible to Eubanks, it is apparent that very little time could have elapsed between the moment his headlights came into view and the time of the accident. The mere fact that there were no approaching cars in sight when Eubanks alighted from the truck, therefore, does not establish that the occupants of the Eubanks truck had sufficient time within which to effectively warn approaching traffic of the danger after the truck stopped. Also, the action of Mr. Eubanks in immediately attempting to discover and repair the cause of the trouble was, in our opinion, a reasonable attempt to remove the truck from the highway. Considering the very short period of time which elapsed between the stalling of the truck and the accident, the action of Mr. Eubanks in endeavoring to determine the cause of the trouble, and the time which would be required for the occupants of the truck to effectively warn approaching motorists, we conclude, as did the trial judge, that plaintiffs are free from contributory negligence.
*847 As a result of the accident, Mr. Eubanks, who is a farmer, sustained injuries consisting of a fracture of the twelfth left rib, injuries to the left knee, a low back strain, multiple abrasions and bruises about the forehead and chest, and a large hematoma on his left wrist. He was treated by Dr. Charlie Fred Passman, a general practitioner, from the date of the accident until sometime in February, 1961, and by Dr. Jack H. Phillips, an orthopedic surgeon, from February 6 until May 2, 1961. The treatment administered to him included hospitalization from December 21 to December 24, 1960. The medical testimony is uncontradicted to the effect that the injuries sustained by Mr. Eubanks were of a painful nature, that all of his injuries except that to his low back area have healed without residual disability, that he was totally disabled from performing manual labor from the date of the accident until May 2, 1961, a period of about four and one-half months, and that he has been partially disabled from performing his customary duties on his farm since that time. Dr. Passman diagnosed Mr. Eubanks' back injury as "either a severe lumbosacral muscle strain, or a fracture of an intervertebral disc." Dr. Phillips initially felt that Mr. Eubanks had suffered a disk damage, consisting of a ruptured or protruding lumbosacral disk, and he recommended surgery. He concluded later, however, that this disk injury had mended by May 2, 1961, that thereafter his complaints of pain and disability were due to hypotrophic arthritis of the spine, and that surgery was no longer needed. The doctor, however, does not specifically relate plaintiff's present arthritic condition to the accident which occurred on December 20, 1960. The expert medical testimony, therefore, does not show whether there is a causal relationship between the accident and Mr. Eubanks' present disabling condition. The lay testimony shows that prior to the accident he had no trouble referable to his back, and that almost constantly since the accident he has suffered pain in his back.
The trial judge concluded that "the plaintiff suffered much pain with the fracture of one rib, the bruised left knee, coupled with the low back injury from which he could not be expected to recover entirely, but from which maximum recovery would be at the end of a period of six months according to the prognosis of the doctor." On that basis he awarded Mr. Eubanks, individually, the sum of $6,500.00 for pain and suffering. Considering all of the evidence, we are unable to say that the trial judge erred in his conclusions as to the nature of this plaintiff's injuries, or that the award is manifestly excessive or inadequate. We, therefore, affirm the trial court's award for this item of damages.
The trial judge made no award to Mr. Eubanks as special damages. We agree that the evidence fails to establish any loss of earnings, past or future, but we think plaintiff has established by a preponderance of the evidence that he has suffered the following losses or has incurred the following expenses in connection with the treatment of the injuries which he sustained:

Catahoula Clinic-Hospital ____________ $244.90
Dr. Jack H. Phillips _________________ 60.00
Travel expenses to and from Jonesville
for medical treatment ................ 20.16
Repairs to the Eubanks truck _________ 60.90
 _______
 Total ___________________ $385.96

In our opinion the award to Mr. Eubanks, individually, should be increased by the amount of these established special damages.
The trial judge found that "neither Mrs. Eubanks or the daughter, Gloria Nell Eubanks, were injured to any extent," and accordingly, he rejected their demands for damages.
The evidence shows that as a result of the accident Mrs. Eubanks sustained a bruise of the scalp and a bruise of her right arm, which were described by Dr. *848 Passman as being "not too serious," and these injuries apparently healed in due course without leaving any scars or disability.
The injuries sustained by Gloria Nell Eubanks consisted of "multiple bruises across the body wall of the anterior chest." These injuries also were described by Dr. Passman as "nothing serious," and they apparently healed completely without complications.
Although the injuries sustained by Mrs. Eubanks and her daughter were of a relatively minor nature, we think they were serious enough to warrant an award of damages to each of these parties. In our opinion an award of $200.00 to each would be fair and adequate.
For the reasons herein assigned, the judgment appealed from is amended in part, reversed in part, and recast to read as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, William O. Eubanks, individually, and against the defendants, Thomas M. Wilson, Jr., and American Indemnity Company, in solido, in the full sum of $6,885.96, with legal interest thereon from November 1, 1961, until paid, and for all costs of these proceedings, including a fee of $50.00 for each of the expert witnesses.
It is further ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Mrs. Pearl Stutson Eubanks, and against defendants, Thomas M. Wilson, Jr., and American Indemnity Company, in solido, in the full sum of $200.00, with legal interest thereon from November 1, 1961, until paid.
It is further ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, William O. Eubanks, as administrator of the estate of the minor, Gloria Nell Eubanks, and against the defendants, Thomas M. Wilson, Jr., and American Indemnity Company, in solido, in the full sum of $200.00, with legal interest thereon from November 1, 1961, until paid.
It is further ordered, adjudged and decreed that there be judgment herein in favor of defendant-in-reconvention, William O. Eubanks, and against the plaintiff-in-reconvention, Thomas M. Wilson, Jr., rejecting the demands of the plaintiff-in-reconvention at his costs.
All costs of this appeal are assessed to defendants, Thomas M. Wilson, Jr., and American Indemnity Company.
Amended and affirmed in part; reversed in part; and rendered.
TATE, Judge (concurring).
The writer reaches the same result as does the majority, but for different reasons.

I.
In my opinion, the defendants-appellants are correct in contending that, under the necessities and circumstances of modern high-speed traffic, the night motorist is not negligent in driving at a speed greater than that in which he can stop within the range of his vision, nor is he ordinarily required to slow or stop at every momentary interference with his vision by the lights of oncoming traffic.
Such former strict duty of night motorists was based upon the slower traffic conditions of yesterday, although it is often still cited as the general rule applicable to night motorists. However, it is now shot through with many exceptions, reflecting the changed conditions and the higher speeds of today (and the consequent greater duty on the part of stopping motorists not to cause unreasonable hazards by obstructing the travelled portions). Actually, therefore, for most situations the general rule is now reflected by the so-called "exception" to it, and the "unusual" or "extraordinary" situations justifying application of the "exception" to the general rule are broadly construed so as to encompass any *849 situation where the highway is unreasonably obstructed by another.
See Professor Wex Malone's comments on the erosion of the "assured clear distance" rule in the annual symposiums on the work of our state supreme court at 19 La.Law Rev. 338 (1959), 18 La.Law Rev. 68 (1957), and 17 La.Law Rev. 346-348 (1957). In these commentaries, Professor Malone suggests that we should frankly realize that the old "assured clear distance" rule has been modified to reflect modern conditions, so that "the duty could now be appropriately described as one merely obliging the driver to maintain such control and speed as will enable him to bring his car to a reasonable stop if faced with a sudden obstruction in his path of travel." 18 La.Law Rev. 68. See also Puissegur v. Louque, La.App. 1 Cir., 113 So.2d 795, one of the far-sighted and practical opinions of Judge Robert Ellis of the First Circuit.
I think that the more recent decisions of the Supreme Court can fairly be characterized as holding that a night motorist may assume that the road is safe for travel and is not charged with the duty of guarding against striking negligent obstruction to travel, which he had no reason to anticipate he would encounter on the highway. Suire v. Winters, 233 La. 585, 97 So.2d 404; Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127; Vowell v. Manufacturers Casualty Co., 229 La. 798, 86 So.2d 909; Dodge v. Bituminous Casualty Co., 214 La. 1031, 39 So.2d 720. In accordance with this general rule, the operator of a vehicle stopped on the highway and thus obstructing travel, is under a correlative duty to protect traffic approaching from his rear by adequate lights and signals. Fontenot v. Lafleur, La.App. 3 Cir., 124 So.2d 607, certiorari denied, and cases cited therein.
However, "in determining whether a motorist is negligent in failing to observe a stationary vehicle obstructing the highway ahead, no hard and fast rule can be laid down, but the surrounding circumstances and facts bearing on a particular case must be considered. * * * [such as,] locality, position of the two vehicles, nature of construction and operation and effect of lighting equipment * * * [and] the circumstance of reduced visibility", Ramsey v. Langston, La.App. 2 Cir., 140 So.2d 775-778, summarizing decisions on the question. Likewise, the correlative duty of the operator of the stopped vehicle to provide suitable warning, varies with the factual sitution, including such circumstances as whether the operator could reasonably have moved the vehicle out of the travelled lanes, how long the vehicle remained obstructing the highway, how much hazard was created (including the volume of traffic to be expected at the time and place of the accident), and what sort of and how visible were the actual warnings provided for the stopped vehicle.
Applying to the present facts the general rules set forth above in this concurring opinion, I am unable to say that the trial court committed manifest error in holding (a) that the oncoming motorist should reasonably have observed sooner the lighted vehicle stopped ahead in his path in time to have avoided the accident, and (b) that the operator of the stopped vehicle, under all of the present facts and circumstances (including the momentary nature of the stop, his inability to move the vehicle further off the highway, the apparently deserted nature of the rural roadway, and his well-lighted red taillight), sufficiently warned traffic approaching from his rear, of the hazard created by his disabled vehicle just after it had stopped and obstructed part of the roadway.
Consequently, I reach the same conclusion in favor of affirmance as does the majority, although for different reasons.

II.
It must be admitted, however, that there are expressions in the jurisprudence which support the majority's construction of it as requiring the greater standard of care *850 of a night motorist described by the majority opinion. And, for instance, if the oncoming night motorist strikes a child on the pavement, Brooks v. State Farm Mut. Auto. Ins. Co., La.App. 2 Cir., 91 So.2d 403, certiorari denied, or even a cow in a non-stock law area, Geohegan v. Greyhound Corp., 226 La. 405, 76 So.2d 212, he may be held negligent for failing to avoid the accident by not observing sooner an object in the highway which, in reality, may be virtually as obscure and indistinguishable as the obstructing truck parked on the highway, which (as to an oncoming motorist) was held to constitute a negligent parking which was the sole proximate cause of the accident in Suire v. Winters, 233 La. 585, 97 So.2d 404.
As a provisional brief explanation for this seeming disparity in legal results flowing from approximately the same physical facts under the jurisprudence of yesterday and today, may I suggest the following, for tomorrow's lawyer and the discussion and development or discard by tomorrow's jurisprudence?
We sometimes fail to take into consideration that actionable negligence, or the duty of a person, varies not only with the physical circumstances surrounding an accident, but also with respect to the interest or the class of persons whose interests are harmed by the conduct of the person whose act causes the harm. Restatement of Torts, Section 281; Harper & James, The Law of Torts (1956), Chapter 18, especially Sections 18.1 and 18.2, pp. 1015 ff.; Prosser on Torts (2d ed. 1955), Section 36, pp. 166 ff.
As to the jurisprudence regarding the liability of a night motorist who collides with an object in his path, the truth of the matter is that there is a different standard of duty owed by a night motorist (i. e., a different standard of liability imposed upon him) (1) to another person or his property rightfully on the travelled portion of the highway, as compared with the duty owed by the motorist (2) to such other person who unreasonably creates a hazard to oncoming traffic by unnecessarily and without adequate warning obstructing the travelled lanes.
As to the first class of persons, the night motorist is held to a stricter duty in the driving of a powered motor vehicle, by its nature hazardous to others, of seeing what he reasonably should see if operating the vehicle with due care for the safety of others rightfully on the travelled portion of the roadway. McCandless v. Southern Bell T. & T. Co., 239 La. 983, 120 So.2d 501; Belshe v. Gant, 235 La. 17, 102 So.2d 477; Geohegan v. Greyhound Corp., 226 La. 405, 76 So.2d 412; Jackson v. Cook, 189 La. 860, 181 So. 195. As to the second class of persons, however, the oncoming night motorist is not held to as strict a standard of observation and control, since he is not required to anticipate the hazard of unwarned dangerous obstructions in the travelled lane of a through highway, a peril to traffic so great, under the high speeds and necessities of modern travel, that it is not readily foreseeable that others will, without adequate warning, create or permit unreasonable and unnecessary blockage to the through passage on the highways of oncoming traffic. See Suire v. Winters and other cases cited in Section I of this concurring opinion. (Stated another way, a motorist is not negligent simply for failing to anticipate that another may be negligent.)
It is not as startling as it may seem at first blush that the same conduct may be held to be negligent as to one class of persons and not as to another class having the same physical (but not legal) relationship to the person alleged to be a tortfeasor. We have numerous other instances of this in tort law, such as: the varying duties owed by an occupier of premises to others classified respectively as an invitee, a licensee, or a trespasser, each of whom may be injured by the same hazard on the premises, but to each of whom a different standard of liability is applied, see discussion in Alexander v. General Accident *851 Fire & Life Assur. Corp., La.App. 1 Cir., 98 So.2d 370; the difference in the greater duty owed by a day motorist to a child who is near but not on the highway, Guillory v. Horecky, 185 La. 21, 168 So. 481, and the lesser one owed to an adult pedestrian similarily situated, Ballard v. Piehler, La.App. 1 Cir., 98 So.2d 273; the difference in the duty owed by a motorist to one he strikes in his own lane of traffic, as compared with the greater duty he owes to one he strikes in the other lane(s) of traffic reserved for traffic approaching from the opposite direction, Rizley v. Cutrer, 232 La. 655, 95 So.2d 139, Breaux v. Valin, La.App. 3 Cir., 138 So.2d 405.
Admittedly, the application of these differing rules of liability or duty is not free from difficulty. Before determining the oncoming night motorist's duty, for instance, a prima facie determination must be made as to whether the stopped motorist is within the class of those rightfully on the highway instead of those wrongfully obstructing it, although the written opinion will probably discuss the latter's duty and status in terms of contributory negligence only.
However, what tort law tries to do, in allocating fault and recovery after an accident, is to determine such questions in the light not only of reasonable prudence and ordinary care under the circumstances, but also in the light of the interests protected or disfavored by law. As to the latter consideration, for instance, in determining the negligence of an oncoming motorist, an innocent fault-free child on the pavement at night may be accorded much greater protection, Brooks v. State Farm Mut. Auto. Ins. Co., La.App. 2 Cir., 91 So.2d 403, certiorari denied, than an adult similarly situated, Dardar v. Guidry, La.App. 1 Cir., 140 So.2d 423, let alone a motorist who unreasonably creates an extreme hazard to oncoming traffic by unreasonably obstructing the highway, Fontenot v. Lafleur, La.App. 3 Cir., 124 So.2d 607, certiorari denied.
Applying such considerations to the present facts, we find that the plaintiff's disabled vehicle had been stopped momentarily with a clearly visible taillight as far as possible off the highway, but nevertheless obstructing part of it. Although the question is very close, under all the circumstances I am unable to say that the trial court erred in finding the plaintiff should not be classified as unreasonably obstructing the highway without adequate warning under the circumstances. The defendant motorist thus, under the trial court's appreciation of the facts, breached the duty owed by him to one rightfully on the highway. Under the circumstances and applying the standard of care thereby required with respect to a vehicle stopped without negligence on the highway ahead, the oncoming motorist should reasonably have observed the automobile on his pathway ahead in time to have slowed and avoided the accident.
For the foregoing reasons, I respectfully concur in the affirmance of the trial court judgment.

On Application for Rehearing.
En Banc. Rehearing denied.