ON APPLICATIONS FOR REHEARING
On application for rehearing, the State informed this court that the written opinion of the circuit court denying the petition for writ of error coram nobis was "inaccurately reproduced in the appellate record." Those inaccuracies do not affect the outcome of this appeal. However, a correct copy of that order has now been obtained as authorized by Rule 10(f), A.R.App.P. Therefore, because the circuit court's opinion was an appendix to the opinion of this court, our opinion issued on original submission is hereby withdrawn and the following is substituted therefor.
In 1982, Varnall Weeks was convicted for the capital offense of murder during the course of a robbery and was sentenced to death pursuant to Ala. Code 1975, § 13A-5-40(a)(2). His conviction was affirmed on appeal. Weeks v. State,456 So.2d 395 (Ala.Cr.App. 1983), affirmed, Ex parte Weeks, 456 So.2d 404
(Ala. 1984), cert. denied, Weeks v. Alabama, 471 U.S. 1030,105 S.Ct. 2051, 85 L.Ed.2d 324 (1985).
In May 1986, Weeks filed a petition for writ of error coram nobis. Weeks's motion for a competency investigation was granted in July 1986. After an evidentiary hearing, the circuit court denied the petition in August 1988. Based upon the circuit court's findings of fact and conclusions of law, attached as an appendix to this opinion, this Court affirms the judgment of the circuit court denying the petition for writ of error coram nobis. Our independent examination of the proceedings convinces this court that those findings and conclusions are correct and that they are supported by the record.
In this case, Weeks has not raised an objection to the circuit court's verbatim adoption of the State's proposed findings of fact and conclusions of law. However, we issue a caution that courts should be reluctant to adopt verbatim the findings of fact and conclusions of law prepared by the prevailing party. Despite the fact that such a practice is subject to criticism, the general rule is that "even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous." Anderson v. City of Bessemer, N.C., 470 U.S. 564,572, 105 S.Ct. 1504, 1510-11, 84 L.Ed.2d 518 (1985). In this case, the proposed findings and conclusions present a fair and accurate statement of the facts and of the applicable law. The record of the evidentiary hearing of the coram nobis petition shows that the circuit judge was well informed as to the issues presented. The judge allowed Weeks's counsel considerable latitude and even instructed counsel to amend the petition by adding additional grounds.
It is evident that the judge's explicit or implicit rulings during the coram nobis hearing provided the framework for the proposed findings. We do not consider this a case where the judge merely "uncritically accepted" and acquiesced in the findings of the prevailing party. Anderson, 470 U.S. at 572,105 S.Ct. at 1511.
The appellant's application for rehearing is overruled. The State's application for rehearing seeking the correction of the *Page 866 
record and of the original opinion is granted as indicated in the first paragraph of this opinion.
The judgment of the circuit court denying the petition for writ of error coram nobis is affirmed.
STATE'S APPLICATION FOR REHEARING GRANTED; STATE'S RULE 39(K) MOTION DENIED; APPELLANT'S APPLICATION FOR REHEARING OVERRULED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
All Judges concur.
APPENDIX
In the Circuit Court of Macon County, Alabama
CC 82-42
Varnall Weeks, Petitioner,
 v.
State of Alabama, Respondent.
 RESPONDENT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
The Court having heard and considered all of the evidence make the findings of fact and conclusions of law set out below and enters final judgment denying petitioner relief.
 INEFFECTIVE ASSISTANCE OF COUNSEL
An evidentiary hearing was held on petitioner's ineffective assistance of counsel claims. At the hearing, petitioner was represented by counsel and presented evidence. The Court, after hearing the testimony and observing the demeanor of the witnesses, makes the findings of fact and conclusions of law set out below:
 A. Legal Standard for Deciding Ineffective Assistance Claims
The legal test to be used in determining ineffective assistance of counsel claims is set out in Strickland v.Washington, 466 U.S. 668, [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984).Ex Parte Daniel, 459 So.2d 948, 951 (Ala. 1984); see, ExParte Baldwin, 456 So.2d 129, 134 (Ala. 1984). In Strickland v.Washington, supra, the United States Supreme Court provided an authoritative statement of the law on ineffective assistance of counsel claims. The Court stated that the fundamental matter for decision on any claim of ineffective assistance must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." The Court then held that there are two components to an ineffective assistance of counsel claim:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687 [104 S.Ct. at 2064].
As to the first component of an ineffective assistance of counsel claim, the Court held that the standard for measuring attorney performance is an objective one, "reasonableness under prevailing professional norms." 466 U.S. at 688
[104 S.Ct. at 2065]. Because the purpose of the Sixth Amendment is to insure that a defendant receives a fair trial, the Court said "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." 466 U.S. at 688
[104 S.Ct. at 2065]. In announcing this standard, the Court rejected an approach which would entail intensive or intrusive after-the-fact inquiry concerning an attorney's performance, and it rejected establishing rigid requirements or detailed guidelines for attorney performance. *Page 867 
For these and other reasons, the Court held that:
 Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134 [102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Michel v. New York [Louisiana], supra, 350 U.S. [91] at 101 [76 S.Ct. 158 at 164, 100 L.Ed. 83 (1955)]. There are countless ways to provide effective assistance in any given case.
Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpastor, the Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 343 (1983).
466 U.S. at 689-690 [104 S.Ct. at 20652066] (emphasis added).
After a petitioner has identified the specific acts or omissions which he alleges were not the result of reasonable professional judgment, the court must determine whether those acts are "outside the wide range of professionally competent assistance." 466 U.S. at 690 [104 S.Ct. at 2066]. In making that determination, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690 [104 S.Ct. at 2066].
In addition, the Court said that an attorney's strategic choices, made after reasonable investigation, are virtually beyond challenge and that whether an attorney's strategic choices were reasonable may be determined, or substantially influenced, by what he was told by a defendant. 466 U.S. at 690
[104 S.Ct. at 2066].
Even if a defendant can show that his attorney's performance was deficient, his conviction or sentence will not be set aside absent his affirmatively proving prejudice. A defendant must prove prejudice because any given error is as likely to have been harmless as it is to have been harmful.466 U.S. at 691-693 [104 S.Ct. at 2066-2068]. A defendant must do more than "show that the errors had some conceivable effect on the outcome of the proceeding." 466 U.S. at 693
[104 S.Ct. at 2067]. In order to prove that he was prejudiced by his attorney's deficient performance:
 The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
466 U.S. at 694 [104 S.Ct. at 2068]. More specifically, the Court held:
 When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.
466 U.S. at 695 [104 S.Ct. at 2068-2069]. The totality of evidence must be considered *Page 868 
in determining whether defendant was prejudiced.
Two other United States Supreme Court decisions are pertinent to petitioner's claim that trial counsel was ineffective. The first is United States v. Cronic, 466 U.S. 648 [104 S.Ct. 2039,80 L.Ed.2d 657] (1984). In Cronic, the Court held:
 The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted — even if defense counsel may have made demonstrable errors — the kind of testing envisioned by the Sixth Amendment has occurred. . . .
466 U.S. at 656 [104 S.Ct. at 2045] (footnote omitted) (emphasis added). The Cronic decision also held that: "[b]ecause we presume that the lawyer is competent to provide the guiding hand that the defendant needs . . . the burdenrests on the accused to demonstrate a constitutionalviolation." 466 U.S. at 658 [104 S.Ct. at 2046] (footnote omitted) (emphasis added).
The second pertinent decision is Engle v. Isaac, 456 U.S. 107
[102 S.Ct. 1558, 71 L.Ed.2d 783] (1982), in which the Court held:
 Each trial permits a myriad of possible claims. Counsel might have overlooked or chosen to omit respondent's due process argument while pursuing other avenues of defense. We have long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim. . . .
456 U.S. at 134 [102 S.Ct. at 1575] (emphasis added).
These cases provide the framework for analyzing petitioner's ineffective assistance of counsel claim. Jock Michael Smith's representation of petitioner was not deficient and petitioner was not prejudiced by his actions at trial.
 B. Trial Counsel
The following are facts concerning trial counsel's representation as a whole:
Jock Smith was appointed to represent petitioner on May 3, 1982. Smith was at the time of petitioner's trial and is currently one of the most competent members of the Macon County Bar. Smith was licensed to practice law in this state in 1976, and was employed as an Assistant Attorney General in the criminal appeals division before entering the private practice of law in Macon County for more than five years at the time of petitioner's trial. Smith had conducted between ten to fifteen felony jury trials before petitioner's trial. At the time of petitioner's trial, Smith's practice was 60 to 75 percent criminal defense work.
In preparation for petitioner's trial, Smith utilized materials provided by the Southern Poverty Law Center concerning defense of capital murder cases. Smith had attended seminars sponsored by the Southern Poverty Law Center concerning capital murder defense.
Smith filed numerous pre-trial motions and was successful in excluding the testimony of then co-defendant Chenoy Weeks. Smith met with petitioner 6 to 8 times prior to trial, and went to Kilby Prison where petitioner was held before trial on at least two occasions. Smith also interviewed potential prosecution witnesses before trial.
 C. Failure to Object to Joinder of Petitioner's and Chenoy Weeks' Trial
In paragraph 39 of his petition, petitioner alleged that his trial counsel was ineffective in not objecting to the joinder of petitioner's and Chenoy Weeks' trials. In support of this claim, petitioner presented no evidence. Respondent relied upon the trial transcript.
The record indicates that Chenoy Weeks was not tried with petitioner in this case. Smith was able to prevent Chenoy Weeks' testimony from being presented because he was incompetent. This claim is wholly without merit. *Page 869 
 D. Failure to Demand that a Jury Participate in the Sentencing Phase of the Proceedings
In paragraph 41 of his petition, petitioner alleged that his trial counsel was ineffective by not demanding that a jury participate in the sentencing phase of the proceedings. In support of this claim, petitioner presented no evidence. Respondent relied upon the testimony of Smith and trial transcript.
The record of petitioner's capital murder trial clearly indicates petitioner's desire that the jury not participate beyond the guilt stage. (R. 383-392). Smith stated on the record his objections to this action. (R. 384-386). Smith testified at the evidentiary hearing that petitioner was adamant about the jury not participating further in his case, and that there was nothing more he could have done at that point. Smith testified that petitioner was surprised by the jury verdict and was angry that the jury had found him guilty.
This Court finds as a fact that Smith's actions were proper and that he did all that he could have done. Trial counsel was representing a man who was angry at the jury and did not "want to deal with them anymore." (R. 388). Trial counsel was placed in a position of attempting to defend petitioner after he informed the trial court that he wanted the death penalty. (R. 388). Trial counsel's performance was certainly not deficient, nor was petitioner prejudiced in any way by his actions at that point.
 E. Failure to Object to Voir Dire Questioning and Excusing of Jurors Who Knew Chenoy Weeks
In paragraph 43 of his petition, petitioner alleged that his trial counsel was ineffective by allowing voir dire questioning and the excusing of jurors who knew Chenoy Weeks. In support of this claim petitioner presented no evidence. Respondent relied upon the trial transcript.
The record indicates that prospective juror James Alexander was challenged for cause because he stated that he knew Chenoy Weeks as a friend and it would be impossible for him to render a fair and impartial verdict. The trial court properly granted the challenge for cause. (R. 39-40). Additionally, prospective juror Enid W. Bowers stated in response to the Court's general qualifications as to physical disability that she knew both petitioner and Chenoy Weeks. The trial court excused Mrs. Bowers for physical reasons, extreme hardship and bias. (R. 9-10).
This Court finds as a fact that trial counsel's performance was not deficient and petitioner was not prejudiced by his actions as regards this claim.
 F. Failure to Request a Mental Examination of Petitioner
In paragraph 42 of his petition, petitioner alleged that trial counsel was ineffective by not requesting a mental examination of petitioner as part of the proceedings. In support of this claim petitioner presented his testimony and that of Smith and Father Kevin Duignan, as well as certain medical records from Bryce Hospital. Respondent relied upon the same records, as well as recent records from Taylor Hardin Secure Medical Facility and the cross-examination of the witnesses.
Trial counsel met with petitioner several times prior to trial and discussed his case. Smith asked petitioner about any mental problems petitioner may have had in the past. Petitioner denied having any prior mental problems. Smith found petitioner to be intelligent and opinionated. Petitioner insisted he was competent and innocent of the charge. Petitioner told Smith that he had never had a prior mental examination. Smith testified that in his discussions with petitioner, he always appeared lucid, there were no visible signs of mental instability and Smith never thought petitioner was irrational. Smith had no difficulty communicating with petitioner who was cooperative and discussed the procedures associated with the trial.
Smith testified that the second reason he did not pursue an insanity defense was because it would have been poor strategy. The insanity defense assumes a criminal defendant was guilty, but was not responsible for his actions. Smith testified that *Page 870 
unless a criminal defendant was visibly crazy, juries were not likely to accept the insanity defense. Given the evidence in petitioner's case, Smith felt that the best theory of defense was that petitioner did not commit the capital murder.
Smith testified that since petitioner was black and all the members of the jury were black, along with the tendency of juries in Macon County to return not guilty verdicts, he felt petitioner's best chance of acquittal was on a plea of not guilty. But for the ballistics testimony, Smith testified that he felt the jury would not have convicted petitioner.
This Court finds as a fact that trial counsel's decision not to pursue an insanity defense was based on sound strategic grounds. Trial counsel was faced with petitioner's vehement demand not to raise insanity, and petitioner's failure to inform trial counsel of his prior admissions to Bryce Hospital.
Petitioner has failed to meet his burden of establishing that he was prejudiced by trial counsel not raising an insanity defense. There was no evidence presented that established that if trial counsel had, over petitioner's stated objections, raised insanity, that the jury would not have convicted petitioner. This Court further finds that the two theories of defense, that is that petitioner did not kill Mark Batts and that petitioner was insane at the time of the murder, are mutually exclusive. Not only did trial counsel pursue the best defense theory available to petitioner, he also avoided presenting conflicting evidence to the effect that petitioner did not commit the murder, but if he had, petitioner was not responsible for his actions.
Further, as to prejudice specifically, this Court ordered petitioner examined at Taylor Hardin Secure Medical Facility prior to the evidentiary hearing. The report of the Lunacy Commission states that petitioner was not "experiencing any psychological abnormalities at the time of the alleged crime" he was "not mentally defective or emotionally disturbed." Additionally, it was found that petitioner "did not act under extreme duress or under the substantial domination of another person." (Lunacy Commission Report, dated January 12, 1987). The Lunacy Commission also found that petitioner was and is competent to understand the nature of court proceedings and is capable to assist his attorneys on his own behalf. This Court finds that even if trial counsel had requested a mental examination of petitioner, the resulting information gained from such an examination would not have altered the outcome of petitioner's murder trial.
 G. Holding As to Ineffective Assistance Claims
Petitioner has failed to meet his burden of establishing that his trial counsel was constitutionally deficient in his performance. Petitioner has merely shown that trial counsel did not do something his current counsel would attempt. Petitioner has asserted on at least three points incorrect statements of the evidence at trial or actions of counsel. Petitioner has utterly failed to overcome the strong presumption that trial counsel rendered effective assistance and used reasonable professional judgment.
Additionally, petitioner has failed to meet his burden of proving a reasonable probability that, but for trial counsel's failures, the outcome of petitioner's trial would have been different. Petitioner has shown no factual basis for his contentions.
Petitioner has failed to prove that his trial counsel was ineffective. The trial transcript and the evidence presented at the coram nobis hearing established instead that petitioner was represented by dedicated and able trial counsel who acted at all times in his behalf. Petitioner received the effective representation he was guaranteed by the Constitution. Petitioner's conviction and death sentence were not imposed because of any action or failure on the part of his trial counsel. Petitioner was convicted and sentenced to death because of the great weight of the State's evidence. *Page 871 
 AMENDMENT TO PETITION: NEWLY DISCOVERED EVIDENCE
At the evidentiary hearing, this Court instructed present counsel to present a claim of newly discovered evidence as to petitioner's criminal charges in or around 1974, which files were not available to trial counsel because the circuit clerk would not locate these records. Petitioner asserts that if available these records would have indicated that petitioner was not competent to stand trial in 1974 and this information would have altered trial counsel's preparation for trial and may have caused trial counsel to raise not guilty by reason of insanity at petitioner's capital murder trial.
Petitioner's Bryce Hospital records indicate that he was sent to Bryce for evaluation on November 21, 1974 because of pending multiple burglary charges. On January 2, 1975, the Forensic Evaluation Board reported that petitioner was emotionally disturbed and needed treatment and further evaluation. At no point was petitioner determined to be mentally incompetent as petitioner alleged. On May 28, 1978, the Forensic evaluation Board reported their unanimous opinion that petitioner was not suffering from a mental disorder of sufficient severity to preclude his taking part in his trial and effectively assisting his attorney in his own defense. Petitioner was discharged to Macon County after six months evaluation.
This Court finds as a fact that this evidence, if it had been available to trial counsel would not have had an affect on the outcome of petitioner's trial and sentence. Trial counsel testified at the evidentiary hearing that he would not necessarily have filed a motion for mental examination of petitioner if he had these records available to him in preparation for trial. This Court finds, based on the evidence addressed herein, that this evidence would not have affected the trial preparation of Smith. The medical evidence clearly indicates that petitioner's mental condition was not sufficient to preclude petitioner from standing trial, and the fact that petitioner was evaluated, treated and adjudged competent to stand trial by medical experts would have been available for use by the prosecution had defense counsel attempted to utilize this evidence at petitioner's trial.
Further, this Court finds that trial counsel was not ineffective in any manner for not obtaining this evidence. This Court is well aware of the condition of records maintained by the former circuit clerk of Macon County. Trial Counsel's performance was certainly not deficient in any manner by his failure to obtain records that are to this date not available.
Therefore this Court denies relief as to this claim, as petitioner's cause was not harmed in any way by the non-availability of these records. This Court has examined the medical records associated with these prior criminal charges and finds that they do not support petitioner's allegations.
 PROCEDURALLY BARRED CLAIMS
Petitioner raised fifteen other claims in his petition which this Court held at the evidentiary hearing were barred from consideration in this proceeding because petitioner failed to raise them at trial and on direct appeal. These claims were:
1. The Jury Instruction Claim — paragraph 6
 2. Death Penalty Imposition Claim — paragraph 7
 3. Death Penalty Improper Claim — paragraph 7a
 4. Death Penalty Severe and Excessive Claim — paragraphs 7b and 14
 5. Death Penalty Statute Applied in Arbitrary and Capricious and Freakish Fashion — paragraphs 7c, 15, 16, 17 and 18
 6. No Adequate Notice of Aggravating Circumstances — paragraph 7d
 7. No Standards for Determining Burden of Proof — paragraphs 73, 19, 20, 21, 22 and 23
 8. Inadequate Appellate Review — paragraphs 7f, 24, 25, 26 and 27
 9. Electrocution is Unnecessarily Cruel — paragraphs 7g, 28 and 29 *Page 872 
 10. Death Penalty is Unjustified — paragraphs 7h, 30, 31, 32, 33 and 34
 11. Systematic Exclusion of Prospective Jurors — paragraphs 8, 9, 35, 36, and 37
 12. Representative Cross Section — paragraph 10
 13. Penalty Phase Inadequate — paragraphs 11 and 38
 14. No Consideration of Mitigating Circumstances — paragraph 13
 15. Improper Evidence Presented at Sentencing — paragraph 40
Coram nobis does not lie to review claims that could have been raised at trial and on direct appeal. E.g., Ex parte Ellison,410 So.2d 130, 132 (Ala. 1982); Ex parte Rudolph, 276 Ala. 392,393, 162 So.2d 846 [486], cert. denied, 377 U.S. 919
[84 S.Ct. 1185, 12 L.Ed.2d 188] (1964); Ex parte Jacques, 409 So.2d 885,886 (Ala. 1982); Summers v. State, 366 So.2d 346 (Ala. 1979). This rule is applicable in capital cases. See, Dobard v. State,455 So.2d 281, 283 (Ala.Crim.App. 1984); Jackson v. State,501 So.2d 542, 544 (Ala.Crim.App. 1986), cert. denied, [483 U.S. 1010] 107 S.Ct. 3242 [97 L.Ed.2d 746] (1987); Coulter v.State, 494 So.2d 895, 905 (Ala.Crim.App. 1986).
The failure to raise an issue which could have been raised at the original trial and on direct appeal bars the remedy of coram nobis review. Ex parte Boatwright, 471 So.2d 1257, 1259
(Ala. 1985). Coram nobis is not a means to obtain a second appeal. Bass v. State, 417 So.2d 582, 584 (Ala.Crim.App.), cert. denied, 417 So.2d 588 (Ala. 1982). Current rules for post-conviction relief are in accord with these cases. See, A.R.Crim.P.Temp. 20.2(a)(3) and (5). Accordingly, these claims are procedurally barred from consideration on coram nobis.
 FINAL JUDGMENT
Based on the findings set out above, it is ORDERED, ADJUDGED and DECREED that the petition for writ of error coram nobis be, and is hereby, Denied.
Done this 12 day of August, 1988.
(s) Dale Segrest Circuit Judge