This is an appeal from the denial of a petition for writ of error coram nobis.
In 1981, David Leroy Coulter's conviction for the capital killing and robbery of George Morris and sentence of death were reversed because of a constitutional infirmity in the death penalty act under which he was prosecuted. Coulter v. State,396 So.2d 1098 (Ala.Cr.App. 1981), on authority of Beck v.Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), and Beck v. State, 396 So.2d 645 (Ala. 1980).
Coulter was retried and, after one mistrial, again convicted and sentenced to death. That conviction and sentence were upheld on appeal. Coulter v. State, 438 So.2d 336 (Ala.Cr.App. 1982), affirmed Ex parte Coulter, 438 So.2d 352 (Ala. 1983). There was no direct appeal of that conviction and sentence to the Supreme Court of the United States.
In July of 1984, Coulter, aided by counsel, filed a petition for writ of error coram nobis in the circuit court of Colbert County in an apparent effort to exhaust his state remedies so that he could seek federal habeas corpus relief. After the circuit judges *Page 898 
of Colbert County recused themselves at Coulter's request, Judge Joseph A. Colquitt of the circuit court of Tuscaloosa County was appointed to hear the coram nobis petition. An evidentiary hearing was held and the petition was denied in July of 1985.
In denying the petition, Judge Colquitt issued a "memorandum opinion" in which he made extensive findings of fact. This opinion addressed all fifteen claims raised in the coram nobis petition. A number of these claims were found to be barred procedurally to coram nobis review because they had already been decided on direct appeal, because they could have been but were not raised on direct appeal, or because they were not raised on appeal after having been raised at trial. Some claims were denied on their merits and some claims were found to be both without merit procedurally and substantively.
The findings of fact by Judge Colquitt are supported by the record. His application of the law to the facts is sound and based on well-settled and long accepted principles. We adopt his opinion as our own and attach it to this opinion as Appendix I.
The judgment of the circuit court denying Coulter's petition for writ of error coram nobis is affirmed.
AFFIRMED.
All Judges concur.
 APPENDIX 1 CASE NO. CC 78-53 IN THE CIRCUIT COURT OF COLBERT COUNTY, ALABAMA MEMORANDUM OPINION
The Court, after hearing all the evidence and considering the parties' proposed findings of fact and conclusions of law, enters the following findings:
 CLAIM ONE: The Beck v. State, 396 So.2d 645 (Ala. 1980), Claim.
1. No evidentiary hearing was held on this claim because it was raised and decided on direct appeal. Coulter v. State,438 So.2d 336, 342-343 (Ala.Crim.App. 1982), affirmed,438 So.2d 352 (Ala. 1983). This claim is, thus, barred because coram nobis does not lie to relitigate issues raised and decided on direct appeal. E.g., Bass v. State, 417 So.2d 582, 584
(Ala.Crim.App.), cert. denied, 417 So.2d 588 (Ala. 1982);Summers v. State, 366 So.2d 336, 340 (Ala.Crim.App. 1978),cert. denied, 366 So.2d 346 (Ala. 1979); see, Dobard v. State,455 So.2d 281, 283 (Ala.Crim.App. 1984).
 CLAIM TWO: The Attorney's Fees and Expense Reimbursement Inadequacy Claim.
2. This claim is barred from coram nobis review because coram nobis does not lie to review claims that could have been raised at trial and on direct appeal but were not. E.g., Ex ParteEllison, 410 So.2d 130, 132 (Ala. 1982); Ex Parte Rudolph,276 Ala. 392, 393, 162 So.2d 486, cert. denied, 377 (U.S. 919 [84 S.Ct. 1185, 12 L.Ed.2d 188] 1964); Summers v. State,366 So.2d 336, 339-340 (Ala.Crim.App. 1978), cert. denied, 366 So.2d 346
(Ala. 1979); see, Dobard v. State, 455 So.2d 281, 283
(Ala.Crim.App. 1984); Magwood v. State, 449 So.2d 1267, 1268
(Ala.Crim.App. 1984).
3. Further, as an alternative to a finding that coram nobis review is barred, the following facts can be found from the testimony and exhibits presented at the hearing:
(a) In paragraphs 12 and 13 of the Petition, Petitioner alleged that his appointed trial counsel lacked sufficient funds with which to defend him. Petitioner specifically alleged that the lack of funds for expenses prevented Petitioner's mother and sister from being brought to Alabama to testify at his sentencing. He further alleged that trial counsel did not investigate and present evidence concerning Petitioner's emotional stress, resulting from his experience as a Marine, because they lacked funds. *Page 899 
(b) In support of this claim, Petitioner presented his testimony and that of James Marks. Neither the testimony of James Marks nor that of Petitioner supported his claim.
(c) James Marks was one of two lawyers appointed to represent Petitioner at his third trial. Marks had also been appointed to assist Bryce Graham at Petitioner's second trial, in which a mistrial was declared. Marks' role at the third trial was to assist a more experienced criminal defense attorney, Carl Stolsworth, who is since deceased.
(d) Marks has been licensed to practice law in the State of Alabama since 1978. At the time of Petitioner's second and third trials, Marks had never been solely responsible for a felony criminal trial but had sat in on at least one felony trial.
(e) Stolsworth was appointed to represent Petitioner from a roll of Colbert County attorneys who met the statutory five years experience requirement, Code of Alabama 1975, § 13-4-8. He had a general practice in Tuscumbia and did a considerable amount of criminal defense work. He had a good reputation as a criminal defense attorney.
(f) Marks' testimony did not support Petitioner's claim that a lack of funds hampered his defense. Both Marks and Stolsworth read a copy of the transcript from Petitioner's first trial in preparation for the third trial. Marks had also prepared for and attended the mistrial and had discussed both the mistrial and the first trial with Stolsworth before the third trial. Marks also either interviewed prosecution witnesses before the third trial or had their prior testimony. Marks could not think of any specific thing that would have been done at Petitioner's last trial that was not done even if trial counsel had had unlimited funds available to them.
(g) Marks was present when Stolsworth and Petitioner discussed using Petitioner's Marine Corps record as evidence at the sentencing stage of his trial. Stolsworth did not want to use the records because of the various disciplinary charges against Petitioner contained in the records.
(h) Marks discussed bringing Petitioner's family down for the third trial with Petitioner. He told Marks not to bring them down.
(i) Trial counsel introduced a petition from residents of Hastings, Minnesota, Petitioner's hometown, at the sentencing stage of Petitioner's third trial. (R.[1] 310-312, 550-553). In her sentencing Order, the trial judge found that the Petitioner had established his good character before the charged offense. (R. 423-428, 502-506).
(j) From the transcripts of Petitioner's trials, it is apparent that Stolsworth chose to use Petitioner's religious conversion, and his good character since that conversion, as mitigation. The testimony of Petitioner's family had not been successful at his first trial. Stolsworth clearly made a strategic choice to proceed differently at Petitioner's third trial. He knew that there were a number of local citizens willing to testify that Petitioner was a changed man. (R. 313-324, 373-405).
(k) Based on their testimony at the first trial, (F.R.[2]
403-418), Petitioner's mother and sister would only have testified to his good character before joining the Marine Corps. Stolsworth was able, through the use of the Hastings petition, to establish, in addition to his religious conversion, Petitioner's good character and reputation in his hometown before he entered the Marine Corps.
(l) Petitioner's testimony did not support his contention that he was denied effective assistance of counsel because of inadequate attorney's fees and expenses. He never asked either James Marks or Carl Stolsworth to bring his family to Tuscumbia. He never asked either of his lawyers if they had any money to assist his family in traveling to Tuscumbia. Even if *Page 900 
Petitioner had asserted that he wanted his family to testify at this trial and had requested that his lawyers seek to obtain their presence, his lawyers were not ineffective and Petitioner was not prejudiced by their nonappearance since his lawyers were able to establish Petitioner's good character before the offense through other means.
(m) Trial counsel did not forego evidence of Petitioner's experience in the Marine Corps because of insufficient funds to produce witnesses. Counsel made a strategic decision after reviewing Petitioner's Marine Corps record not to use such testimony because of the demotion and disciplinary actions contained in those records.
(n) Trial counsel did not forego the testimony of Petitioner's mother and sister because there was no money to pay for transporting them to Tuscumbia. Trial counsel made a strategic decision to travel on Petitioner's religious conversion as mitigation.
(o) Petitioner's defense was not hampered by insufficient funds. Based on the evidence presented to her by trial counsel at the third trial, the trial judge found that Petitioner had established his good character before committing the charged offense. (R. 426) Petitioner was not prejudiced by the absence of his mother and sister. Trial counsel made reasonable strategic decisions in developing his evidence in mitigation. Petitioner is not entitled to relief on this claim.
 CLAIM THREE: Ineffective Assistance of Counsel Claim-Misinformation Concerning Lesser Included Offenses.
4. In Alabama, the standards to be used in determining ineffective assistance of counsel claims are those set out inStrickland v. Washington, [466 U.S. 668] 104 S.Ct. 2052
[80 L.Ed.2d 674] (1984). Ex Parte Daniel, 459 So.2d 948, 951 (Ala. 1984); see, Ex Parte Baldwin, 456 So.2d 129, 134 (Ala. 1984). In Strickland, the Supreme Court promulgated a comprehensive and authoritative statement of the law on ineffective assistance of counsel claims. After recognizing that the fundamental issue to be decided on any claim of ineffectiveness must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," the Supreme Court announced the two components of an ineffective assistance of counsel claim:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
104 S.Ct. at 2064.
As to the first component, the Court held that the proper standard for attorney performance is an objective one: "reasonableness under prevailing professional norms."104 S.Ct. at 2064-2065. Because the purpose of the Sixth Amendment is to ensure that criminal defendants receive a fair trial, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."104 S.Ct. at 2065. The Court rejected an approach which would involve intensive scrutiny of, or intrusive post-trial inquiry into, attorney performance, and rejected rigid requirements or detailed guidelines for such performance. The Court did so because it recognized that such an approach would only serve to encourage the proliferation of ineffectiveness claims, dampen the ardor and impair the independence of counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client. 104 S.Ct. at 2066. Thus, the Court held that:
 Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess *Page 901 
counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134 [102 S.Ct. 1558, 1574-75, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See Michel v. New York, supra, 350 U.S. [91] at 101 [76 S.Ct. 158, 164, 100 L.Ed. 83]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpastor, the Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 343 (1983).
104 S.Ct. at 2065-2066 (emphasis added).
After a petitioner has identified the specific acts or omissions which he alleges were not the result of reasonable professional judgment, the court must determine whether those acts are "outside the wide range of professionally competent assistance." 104 S.Ct. at 2066. In making this determination "the court should recognize that counsel is strongly presumedto have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."104 S.Ct. at 2066 (emphasis added).
Even when a lawyer's performance is outside the wide range of professional reasonableness, the judgment in question is not to be set aside unless the petitioner affirmatively establishes prejudice. The prejudice requirement exists because a particular error is just as likely to be harmless as it is to be prejudicial and thus:
 The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
104. S.Ct. at 2068. More specifically, the Supreme Court held:
 When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.
104 S.Ct. at 2069. In making a prejudice determination, the totality of the evidence that was before the judge must be considered.
Two additional United States Supreme Court decisions are pertinent to the Petitioner's ineffective assistance of counsel claim. The first is Engle v. Isaac, 456 U.S. 107
[102 S.Ct. 1558, 71 L.Ed.2d 783] (1982), in which the Court held that:
 Every trial permits a myriad of possible claims. Counsel might have overlooked or chosen to omit respondent's due process argument while pursuing other avenues of defense. We have long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim. . . . *Page 902 
456 U.S. at 134 [102 S.Ct. at 1575] (emphasis added).
The second relevant case is United States v. Cronic, [466 U.S. 648] 104 S.Ct. 2039 [80 L.Ed.2d 657] (1984), in which the Court held that:
 The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted — even if defense counsel may have made demonstrable errors — the kind of testing envisioned by the Sixth Amendment has occurred. . . .
104 S.Ct. at 2045 (footnotes omitted). The Court further held that: "[b]ecause we presume that the lawyer is competent to provide the guiding hand that the defendant needs . . . theburden rests on the accused to demonstrate a constitutionalviolation." 104 S.Ct. at 2046 (footnote omitted) (emphasis added).
5. The following facts can be found concerning this claim from the testimony and exhibits presented at the hearing on the coram nobis petition:
(a) In paragraphs 14 and 15 of the Petition, Petitioner claims that trial counsel misinformed him about what offenses would be found to be lesser included offenses of the capital offense for which he was charged and that such misinformation amounted to ineffective assistance of counsel. Petitioner claims that because of the misinformation, he rejected an offer of life without parole that he would have accepted had he known it was the "middle" offer available.
(b) In support of this claim, Petitioner presented his testimony and that of James Marks and Billy Underwood. The testimony of Petitioner, James Marks and Billy Underwood did not support Petitioner's claim.
(c) Petitioner told Carl Stolsworth and James Marks, the first time he met with them, that he wanted to receive a sentence which would allow him, someday, to get out of prison. Before his third trial, Petitioner told Stolsworth that he wanted to "roll the dice" on getting a sentence less than life without parole.
(d) Petitioner testified at the coram nobis hearing that he did not know whether he would have accepted the life without parole plea offer if he had been told that the least sentence he would receive was life and that second degree murder and manslaughter were not available lesser included offenses in his case. He further displayed considerable confusion as to how he had been misled by his trial counsel concerning lesser included offenses. His confusion is understandable since the testimony at the hearing establishes that he rejected life without parole as an option before consulting with his attorneys after his first conviction was reversed.
(e) No one ever told Petitioner, in the presence of James Marks, to reject the life without parole plea offer. Both Bryce Graham and Carl Stolsworth told Petitioner that he should consider the plea offer. Petitioner, contrary to the allegation in his Petition, denied discussing the life without parole plea offer with Stolsworth. Marks' testimony, supported by Stolsworth's use of the offer at trial, is more credible and the Court finds that Petitioner's testimony is not credible.
(f) James A. Patton would not have accepted a plea to a lesser punishment than life without parole.
(g) Petitioner was informed that second degree murder and manslaughter would not be lesser included offenses in his case before the life without parole offer was withdrawn. Before Petitioner's mistrial, Judge Johnson informed his then attorney Bryce Graham, in Petitioner's presence, that the lesser included offenses were first degree murder, and, possibly, robbery but not manslaughter. (M.R.[3] 53).
(h) At the time of his discussions with his attorneys about the life without parole plea offer, Petitioner was serving a life *Page 903 
sentence imposed for his participation in a murder in Georgia. He knew that, despite whatever occurred in Alabama, his life sentence in Georgia would have to be served. Since Petitioner was already serving a life sentence, he knew that, even if he received less than life in Alabama, he faced a minimum sentence of life imprisonment. Thus, the contention in his Petition that he would have pled had he known life without parole was the "middle" option is not believable.
(i) Petitioner did not reject the life without parole plea offer because he was misled into thinking he would get a lesser sentence at trial. Petitioner rejected the life without parole offer because he wanted to take a chance on someday getting out of prison. Petitioner's trial counsel were not ineffective in connection with the life without parole plea offer and did not mislead their client into rejecting a plea offer he would have otherwise accepted. Petitioner is not entitled to relief on this claim.
 CLAIM FOUR: Ineffective Assistance of Counsel Claim-Failure to Present Mitigation.
6. The following facts can be found from the testimony and exhibits presented at the coram nobis hearing.
(a) The legal standards applicable to this claim are set out in paragraph 4, above, and are adopted by reference as to this claim.
(b) In paragraphs 16 and 17 of the Petition, Petitioner claims that, because they failed to present mitigating evidence at his sentencing stage hearing, trial counsel were ineffective. The specific allegedly mitigating evidence not produced was that Petitioner lacked the intent to kill George Morris and that, at the time he killed George Morris, Petitioner was under emotional stress caused by the Marine Corps' failure to provide all it had promised him.
(c) In support of this claim Petitioner presented his testimony and that of James Marks. Neither the testimony of Petitioner nor that of James Marks' supports this claim.
(d) Trial counsel made a strategic decision not to use Petitioner's Marine Corps record because it contained references to a demotion and disciplinaries, see paragraph 3 (g), above. Stolsworth discussed this decision and the reasons for it with Petitioner. Petitioner's Marine Corps record would not have been favorable to him but would only have gone to show his bad character. Further, presentation of Petitioner's Marine Corps record would have lessened the beneficial effect of the Hastings, Minnesota petition. (R. 310-312, 550-553).
(e) Petitioner did not testify because Stolsworth, after reading and evaluating the transcript of Petitioner's first trial, decided that he had hurt his defense by testifying. Stolsworth thought that Petitioner had been a poor witness whose testimony was unbelievable. Stolsworth discussed his reasons for the Petitioner not testifying with the Petitioner. The Petitioner agreed with Stolsworth that he should not testify.
(f) When Petitioner testified at his first trial, the prosecution thoroughly impeached his testimony. (F.R. 341-370) Petitioner harmed his defense by testifying.
(g) In his confession, Petitioner denied any intent to kill George Morris and stated that he fired his pistol once, without aiming, to satisfy his co-defendant only. (R. 139-140, 523-524). This statement, introduced by the State, raised Petitioner's lack of intent defense without subjecting Petitioner to damaging cross-examination.
(h) In support of his lack of intent defense and to counter the inferences raised by the location of a live and a spent shell ejected from Petitioner's pistol, trial counsel called W.B. Mosley, who was the first person, after George Morris' widow, to arrive at the crime scene. (R. 234-242). His testimony was offered to show that the prosecution evidence, which tended to show that Petitioner could not have been standing in the store doorway when he fired the fatal shot, was not reliable because objects within the store had been moved when George Morris' body was removed before police secured the inside of his store. (R. 238-239) *Page 904 
(i) Trial counsel made a strategic decision to rely on a lack of intent defense as raised by Petitioner's confession and as supported by the testimony of Mr. Mosley. Stolsworth offered Petitioner his professional advice as to testifying and Petitioner, wisely, agreed with him. Stolsworth's decisions reflected sound professional judgment, and he was not ineffective. Petitioner is not entitled to relief on this claim.
 CLAIM FIVE: Ineffective Assistance of Counsel Claim — Failure to Present Evidence.
7. The following facts can be found from the testimony and exhibits presented at the coram nobis hearing:
(a) The legal standards applicable to this claim are set out in paragraph 4, above, and are adopted by reference as to this claim.
(b) In paragraphs 18 and 19 of the Petition, Petitioner claims that, because no evidence was presented to support his claim that he did not intend to kill George Morris, he was denied effective assistance of counsel. Petitioner specifically contends that he was not allowed to testify.
(c) In support of this claim, Petitioner presented his testimony. Petitioner's testimony does not support his contention that he was not allowed to testify.
(d) As noted above, in paragraphs 6 (e) and (f), trial counsel made a strategic decision that Petitioner should not testify. Stolsworth discussed this decision with the Petitioner, and the Petitioner agreed he should not testify.
(e) Further, a defense witness, W.B. Mosley, testified that he had been the first on the scene after the body was discovered and that Mr. Morris' body and other objects in the store had been moved in attempts to revive Mr. Morris and when his body was removed. This testimony was offered to support Petitioner's lack of intent defense by attempting to explain how damaging evidence, a spent and a live shell ejected from the murder weapon, was found near the body instead of near the door, the point from which Petitioner said he fired the fatal shot.
(f) The Petitioner's trial counsel made a strategic decision to present a lack of intent defense without running the risk of Petitioner testifying. As noted above, in paragraph 6 (f), Petitioner was a poor and unbelievable witness who was discredited by the prosecution when he testified at his first trial.
(g) Petitioner's trial counsel was not ineffective for failing to present evidence. He presented what evidence as existed in the manner most favorable to Petitioner. He prevented Petitioner's defense from being harmed through Petitioner's testifying. Petitioner is not entitled to relief on this claim
 CLAIM SIX: The Jury Guilt Proneness and Fair Cross Section Claim.
8. This claim is barred from coram nobis review because coram nobis does not lie to review claims that could have been raised at trial and on direct appeal but were not. E.g., Ex ParteEllison, 410 So.2d 130, 132 (Ala. 1982); Ex Parte Rudolph,276 Ala. 392, 393, 162 So.2d 486, cert. denied, 377 U.S. 919
[84 S.Ct. 1185, 12 L.Ed.2d 188] (1964); Summers v. State,366 So.2d 336, 339-340 (Ala.Crim.App. 1978), cert. denied, 366 So.2d 346
(Ala. 1979); see, Dobard v. State, 455 So.2d 281, 283
(Ala.Crim.App. 1984); Magwood v. State, 449 So.2d 1267, 1268
(Ala.Crim.App. 1984).
 CLAIM SEVEN: The Sentencing Stage Jury Deadlock Instruction Claim.
9. No evidentiary hearing was held on this claim because it was raised and decided on direct appeal. Coulter v. State,438 So.2d 336, 346 (Ala.Crim.App. 1982), affirmed, 438 So.2d 352
(Ala. 1983). This claim is barred because coram nobis does not lie to relitigate issues that were raised and decided on direct appeal. E.g., Bass v. State, 417 So.2d 582, 584 (Ala.Crim.App.)cert. denied, 417 So.2d 588 (Ala. 1982); Summers v. State,366 So.2d 336, 340 (Ala. 1978), cert. denied, 366 So.2d 346 (Ala. 1979); see, Dobard v. State, 455 So.2d 281, 283 (Ala.Crim.App. 1984). *Page 905 
 CLAIM EIGHT: Admissibility of Co-Defendant's Sentence and of Reasons for Plea Offer at Sentencing Stage Hearing Claim.
10. No evidentiary hearing was held on the issue of the admissibility of Petitioner's co-defendant's sentence at the sentencing stage hearing because that issue was raised and decided on direct appeal. Coulter v. State, 438 So.2d 336,344-346 (Ala.Crim.App. 1982), affirmed, 438 So.2d 352 (Ala. 1983). This claim is barred because coram nobis does not lie to relitigate issues that were raised and decided on direct appeal. E.g., Bass v. State, 417 So.2d 582, 584 (Ala.Crim.App.)cert. denied, 417 So.2d 588 (Ala. 1982); Summers v. State,366 So.2d 336, 340 (Ala. 1978), cert. denied, 366 So.2d 346 (Ala. 1979); see, Dobard v. State, 455 So.2d 281, 283 (Ala.Crim.App. 1984).
11. The issue of the admissibility of the District Attorney's reasons for making the life without parole plea offer is barred from coram nobis review because coram nobis does not lie to review claims that could have been raised at trial and on direct appeal but were not. E.g., Ex Parte Ellison,410 So.2d 130, 132 (Ala. 1982); Ex Parte Rudolph, 276 Ala. 392, 393,162 So.2d 486, cert. denied, 377 U.S. 919 [84 S.Ct. 1185,12 L.Ed.2d 188] (1964); Summers v. State, 366 So.2d 336, 339-340
(Ala.Crim.App. 1978), cert. denied, 366 So.2d 346 (Ala. 1979);see, Dobard v. State, 455 So.2d 281, 283 (Ala.Crim.App. 1984);Magwood v. State, 449 So.2d 1267, 1268 (Ala.Crim.App. 1984).
12. Further, as an alternative to finding that coram nobis review of the issue of the admissibility of the District Attorney's reasons for making the life without parole plea offer is barred, the following facts can be found:
(a) In paragraph 24 of the Petition, Petitioner alleged that the trial court refused to allow him to prove the reasons that a life without parole offer was made to him when it refused to allow Assistant District Attorney Ron Hudson to testify.
(b) In support of this contention, Petitioner called Judge Johnson, James Patton and James Marks. Judge Johnson had no recollection of the bench conference at the sentencing stage of Petitioner's trial, and her testimony did not support Petitioner's claim. The testimony of Marks and District Attorney Patton also did not support Petitioner's claim.
(c) James Patton is the District Attorney for the Thirty-first Judicial Circuit and was the lead prosecutor in all of Petitioner's trials. At Petitioner's third trial, he requested a bench conference after Petitioner's counsel called Ron Hudson, an assistant district attorney who was assisting at trial, as a witness for Petitioner.
(d) At the bench conference, District Attorney Patton objected to his assistant being called as a witness. He also inquired as to the reason Hudson was being called. He was told that Petitioner's purpose was to inform the jury that a plea offer of life without parole had been made before trial. He objected to that testimony being presented.
(e) District Attorney Patton and not Hudson made the plea offer to Petitioner in the case at bar. Petitioner did not seek to call District Attorney Patton as a witness at trial. Petitioner presented no evidence at the coram nobis hearing to show that Hudson knew of District Attorney Patton's reasons for making the plea offer.
(f) District Attorney Patton made the life without parole offer after Petitioner's first conviction was reversed and his case was remanded for a new trial. He always makes such an offer. His reasons in Petitioner's case for making a plea offer of life without parole were that he did not want to subject the victim's family to another trial, he had to relocate and transport a number of out-of-state witnesses, and, under theBeck decision, he had to persuade twelve jurors and the judge before a death sentence would be imposed which could mean that after a lengthy trial, he would end up with a life without parole sentence anyway.
(g) When District Attorney Patton made the life without parole plea offer to Petitioner's *Page 906 
lead counsel, Carl Stolsworth, he did not explain his reasons for making the offer to Stolsworth.
(h) James Marks understood that the reason Assistant District Attorney Hudson was called as a witness at the sentencing stage of Petitioner's third, and last, trial was to put the plea offer before the jury. He did not recall that Hudson was called for any other purpose and, specifically, did not recall Hudson being called to provide reasons for the plea offer.
(i) Petitioner was not prejudiced by the fact that James Marks and not Ron Hudson testified that a life without parole plea offer had been made. The offer was not made out of concern for the strength of the State's case or judgment that the Petitioner deserved mercy. The reasons for the plea offer in Petitioner's case would have harmed and not helped his presentation of mitigating evidence. If anything, the unexplained plea offer was more beneficial to Petitioner since the jury was free to read more significance into the offer than actually existed. Petitioner did not present any evidence to show that Hudson would have testified to any facts to which Marks did not testify. Petitioner presented all that he wanted to present concerning the plea offer and the mere fact that it was Marks and not Hudson who testified did not deprive him of any evidence. Petitioner is not entitled to relief on this claim.
 CLAIM NINE: Claim Concerning Referring to Petitioner's Mississippi Robbery During the Guilt Stage.
13. This claim is barred from coram nobis review because coram nobis does not lie to review claims that could have been raised at trial and on direct appeal but were not. E.g., ExParte Ellison, 410 So.2d 130, 132 (Ala. 1982); Ex ParteRudolph, 276 Ala. 392, 393, 162 So.2d 486, cert. denied,377 U.S. 919 [84 S.Ct. 1185, 12 L.Ed.2d 188] (1964); Summers v.State, 366 So.2d 336, 339-340 (Ala.Crim.App. 1978), cert.denied, 366 So.2d 346 (Ala. 1979); see, Dobard v. State,455 So.2d 281, 283 (Ala.Crim.App. 1984); Magwood v. State,449 So.2d 1267, 1268 (Ala.Crim.App. 1984).
14. Further, as an alternative to finding that this claim is barred from coram nobis review, the following facts can be found:
(a) In paragraphs 25 and 26 of the Petition, Petitioner, claimed that his right to due process of law was violated when evidence of an uncharged offense that he committed, a robbery in Mississippi which occurred the day before the charged robbery-murder, was included in the confession presented to the jury at the guilt stage.
(b) In support of this contention, the Petitioner presented the testimony of Judge Johnson, James Patton, William Underwood and James Marks. Judge Johnson had no recollection of any Mississippi robbery reference. Neither the testimony of the remaining witnesses nor the transcript of the third trial supports this claim.
(c) Petitioner's confession contained references to two offenses other than the charged Alabama robbery-murder. (R. 137-140). Petitioner admitted committing the robbery of a small rural store in Mississippi on the day before he robbed a small rural store and killed George Morris in Alabama. (R. 140) He also committed a robbery-murder in Georgia on the day after he committed a robbery-murder in Alabama. (R. 425, 525) Petitioner was convicted for his participation in the Georgia robbery-murder. (R. 425). He was never charged for the robbery in Mississippi. The trial court physically removed the reference to the Georgia robbery-murder by removing the last page of Petitioner's confession.
(d) The trial transcript reveals that Petitioner's trial counsel objected to the introduction of the Georgia robbery-murder only. (R. 134-136). Both Carl Stolsworth and the District Attorney began by referring to the Mississippi robbery but, upon being prompted by James Marks, made it clear that the Georgia robbery-murder, for which Petitioner had been convicted, was the uncharged offense to which Petitioner *Page 907 
objected. (R. 135) Counsel for Petitioner's initial objection to the mention of the Mississippi robbery rather than the Georgia robbery-murder was inadvertent and was corrected.
(e) Petitioner's confession had been introduced at his first trial and was a part of that transcript. (F.R. 158-160) Both Stolsworth and Marks had read the transcript and discussed the events at the first trial before Petitioner's last trial.
(f) The Georgia crime was both more serious than the Mississippi crime, a robbery-murder as opposed to a robbery, and more factually similar to the Alabama robbery-murder than the Mississippi robbery. From all the evidence, it appears that trial counsel were more concerned with keeping evidence of the more serious crime from the jury at the guilt stage and that trial counsel succeeded in achieving that goal.
(g) Petitioner was represented by Carl Stolsworth and Billy Underwood on appeal. The fact that an uncharged offense, the Mississippi robbery, was put before the jury at the guilt stage was not raised as an issue on appeal because appellate counsel thought that the reference to the Mississippi robbery was admissible under Alabama evidence law to show Petitioner's intent or a common plan, scheme or design.
(h) Petitioner was not prejudiced by the admission of a reference to the Mississippi robbery at the guilt stage of his trial. Even though the trial court excluded the reference to the Georgia robbery-murder, evidence showing both the Mississippi and the Georgia crimes was admissible to show Petitioner's intent and to show that the charged offense was part of one plan or scheme. E.g., Phillips v. State,443 So.2d 1328, 1331-1332 (Ala.Crim.App. 1983); Lucy v. State,340 So.2d 840 (Ala.Crim.App.), cert. denied, 340 So.2d 847 (Ala. 1976);Stanley v. State, 57 Ala. App. 83, 84, 326 So.2d 148 (1976);Bobo v. State, 56 Ala. App. 622, 627, 324 So.2d 336. (1975).
(i) Petitioner placed his intent in issue through his confession and lack of the intent to kill was the substance of his defense. The Mississippi and Georgia crimes were relevant and admissible to prove that Petitioner intentionally killed George Morris. Petitioner is not entitled to relief on this claim.
 CLAIM TEN: Claim Concerning Referring to the Mississippi Robbery During the Punishment Stage.
15. No evidentiary hearing was held on this claim because it was raised and decided on direct appeal. Coulter v. State,438 So.2d 336, 348-349 (Ala.Crim.App. 1982) affirmed, 438 So.2d 352
(Ala. 1983). This claim is barred because coram nobis will not lie to relitigate claims decided on direct appeal. E.g., Bassv. State, 417 So.2d 582, 584 (Ala.Crim.App.), cert. denied,417 So.2d 588 (Ala. 1982); Summers v. State, 366 So.2d 336, 340
(Ala.Crim.App. 1978), cert. denied, 366 So.2d 346 (Ala. 1979);see, Dobard v. State, 455 So.2d 281, 283 (Ala.Crim.App. 1984).
 CLAIM ELEVEN: Use of the Georgia Conviction as an Aggravating Circumstance Claim.
16. No evidentiary hearing was held on this claim because it was raised and decided on direct appeal. Coulter v. State,438 So.2d 336, 346-347 (Ala.Crim.App. 1982), affirmed,438 So.2d 352, 353 (Ala. 1983). This claim is barred because coram nobis will not lie to relitigate claims decided on direct appeal.E.g., Bass v. State, 417 So.2d 582, 584 (Ala.Crim.App.), cert.denied, 417 So.2d 588 (Ala. 1982); Summers v. State,366 So.2d 336, 340 (Ala.Crim.App. 1978), cert. denied, 366 So.2d 346
(Ala. 1979); see, Dobard v. State, 455 So.2d 281, 283
(Ala.Crim.App. 1984).
 CLAIM TWELVE: The Improper Prosecutorial Argument Claim.
17. No evidentiary hearing was held on this claim because coram nobis does not lie to relitigate claims raised at trial but not pursued on direct appeal. E.g., Summers v. State,366 So.2d 336, 340 (Ala.Crim.App. 1978) ("Since the facts were known by appellant and objected to at trial but were not presented as an issue on appeal, they cannot sustain a proceeding *Page 908 
for coram nobis relief."), cert. denied, 366 So.2d 346 (Ala. 1979).
 CLAIM THIRTEEN: Ineffective Assistance of Counsel Claim-Failure to Record and Transcribe All Proceedings, Arguments and Bench Conferences.
18. This claim is barred from coram nobis review because coram nobis does not lie to review claims that could have been raised at trial and on direct appeal but were not. E.g., ExParte Ellison, 410 So.2d 130, 132 (Ala. 1982); Ex ParteRudolph, 276 Ala. 392, 393, 162 So.2d 486, cert. denied, 377 (U.S. 919) [84 S.Ct. 1185, 12 L.Ed.2d 188] (1964); Summers v.State, 366 So.2d 336, 339-340 (Ala.Crim.App. 1978), cert.denied, 366 So.2d 346 (Ala. 1979); Dobard v. State,455 So.2d 281, 283 (Ala.Crim.App. 1984); Magwood v. State,449 So.2d 1267, 1268 (Ala.Crim.App. 1984).
19. Further, as an alternative to finding that coram nobis review of this issue is barred, the following facts can be found concerning that issue:
(a) In paragraph 32 of the Petition, Petitioner claimed that, because all bench conferences were not transcribed at his last trial, he was denied effective assistance of counsel. Petitioner specifically claimed that the non-transcription of a bench conference at the sentencing stage of his trial held after Petitioner called Assistant District Attorney Ron Hudson rendered his trial counsel's representation ineffective. The legal standards applicable to this claim are set out in paragraph 4, above, and are adopted by reference as to this claim.
(b) In support of this contention, Petitioner presented the testimony of Judge Johnson, James Patton and James Marks. The testimony of these witnesses does not support this claim.
(c) It is the standard practice or custom in Colbert County not to record or transcribe bench conferences. Rulings or objections are put into the record after bench conferences if either party or the judge so chooses. Stolsworth was familiar with this practice and had followed the custom in previous trials before Judge Johnson and involving District Attorney Patton.
(d) The only unrecorded bench conference on which Petitioner presented evidence at the coram nobis hearing occurred after Stolsworth called Assistant District Attorney Hudson as a witness. (R. 313) After the bench conference, another witness was called, and after that witness, James Marks was called. Marks testified that the prosecution had made an offer of a life without parole sentence if Petitioner pleaded guilty. (R. 325)
(e) At the bench conference, District Attorney Patton objected both to presenting evidence of the plea offer and to his assistant, who was participating in the trial, testifying. Judge Johnson ruled that the fact that an offer had been made could be presented to the jury and, after satisfying herself that the Code of Professional Responsibility permitted it, that Marks could be the witness since the fact that an offer had been made was not contested. (R. 324) At the bench conference, Stolsworth did not represent that he wanted Hudson to testify to anything other than the fact that an offer of life without parole had been made. Marks testified to what Stolsworth had expected from Hudson.
(f) The life without parole offer was made in order to avoid putting the victim's family through yet another trial and because of the inherent difficulties in trying, and especially re-trying, a capital case including the location and transportation of a number of out-of-state witnesses, see paragraph 12 (e-g), above.
(g) Petitioner's trial counsel were ultimately successful in placing before the jury the fact that the State had, at one time, offered to agree to a sentence of life without parole. Petitioner's counsels' strategy for doing so is clear and, undoubtedly, bolstered the mitigating effect of Petitioner's other witnesses at sentencing. They were not rendered ineffective for not having a bench conference transcribed, which had no real effect on the course of the punishment stage hearing. *Page 909 
 CLAIM FOURTEEN: The Especially Heinous, Atrocious, or Cruel Aggravating Circumstance Claim.
20. No evidentiary hearing was held on this claim because coram nobis does not lie to review claims that could have been raised at trial and on direct appeal but were not. E.g., ExParte Ellison, 410 So.2d 130, 132 (Ala. 1982); Ex ParteRudolph, 276 Ala. 392, 393, 162 So.2d 486, cert. denied,377 U.S. 919 [84 S.Ct. 1185, 12 L.Ed.2d 188] (1964); Summers v.State, 366 So.2d 336, 339-340 (Ala.Crim.App. 1978), cert.denied, 366 So.2d 346 (Ala. 1979); see, Dobard v. State,455 So.2d 281, 283 (Ala.Crim.App. 1984); Magwood v. State,449 So.2d 1267, 1268 (Ala.Crim.App. 1984).
 CLAIM FIFTEEN: The Double Jeopardy Resulting from an Improperly Granted Mistrial Claim.
21. This claim is barred from coram nobis review because coram nobis will not lie to review claims that could have been raised at trial and on direct appeal but were not. E.g., ExParte Ellison, 410 So.2d 130, 132 (Ala. 1982); Ex ParteRudolph, 276 Ala. 392, 393, 162 So.2d 486, cert. denied,377 U.S. 919 [84 S.Ct. 1185, 12 L.Ed.2d 188] (1964); Summers v.State, 366 So.2d 336, 339-340 (Ala.Crim.App. 1978), cert.denied, 366 So.2d 346 (Ala. 1979); see, Dobard v. State,455 So.2d 281, 283 (Ala.Crim.App. 1984); Magwood v. State,449 So.2d 1267, 1268 (Ala.Crim.App. 1984).
21. Further, as an alternative to a finding that coram nobis review is barred, the following facts can be found from the testimony and exhibits presented at the hearing:
(a) In the paragraph denominated "O" in his Amended Petition, Petitioner claimed that his last trial was barred by double jeopardy because the mistrial in his second trial was caused by prosecutorial or judicial overreaching and that double jeopardy was not raised at his last trial because of the ineffectiveness of trial counsel.
(b) In support of this contention, Petitioner presented his testimony and that of Judge Johnson, James Patton, Shirley Johnson, James Marks and Bryce Graham. The testimony of Shirley Johnson conflicted with that of Judge Johnson, District Attorney Patton and James Marks and, after weighing their testimony and hers, including the witness' demeanor, her testimony was not credible. Further, her testimony and Petitioner's, even if true, would not demonstrate that a mistrial was improperly declared. The testimony of Judge Johnson, District Attorney Patton, James Marks, Bryce Graham and the Petitioner, as well as the transcript of the mistrial, shows that Petitioner asked for and received a mistrial and that a mistrial was declared because all of the parties were concerned that the Petitioner was not receiving a fair trial.
(c) A mistrial was declared at Petitioner's second trial. Petitioner's then-lead counsel Bryce Graham had, on a number of occasions, entered into arguments with the court and the district attorney. E.g., (M.R. 283-285). Graham had also not attended several meetings with the District Attorney, called for the purpose of reaching agreements as to evidence and discovery, as requested by Judge Johnson. Before the mistrial, Petitioner had complained that Graham was not coming to see him or preparing for the case but was leaving such duties to Marks, who had no criminal trial experience. Petitioner had also asked Marks to watch Graham and to let him know if Graham was acting to harm him.
(d) Both Judge Johnson and District Attorney Patton became aware that trial counsel's conduct was having a negative effect on the jury and that jurors were displaying signs of frustration such as sighing or rolling their eyes at Graham's actions. The jury's frustration was with Petitioner's trial counsel and not with the prosecution.
(e) Judge Johnson also became concerned over Graham's apparent lack of preparation. He did not appear to have read the transcript of the first trial, reviewed the evidence presented there, or *Page 910 
discussed the case at any length or in any detail with his client. Petitioner was also concerned with the lack of preparation by Graham involving the Petitioner.
(f) Judge Johnson, District Attorney Patton and Marks discussed Graham's conduct and Marks' and Petitioner's concern over whether Petitioner was getting a fair trial. Marks brought up the subject of a mistrial. All three concurred in Judge Johnson calling Chief Justice Torbert for advice on what could be done when a lawyer was acting as Graham was. No one told Marks that he needed to get Petitioner to move for the mistrial in order to avoid any double jeopardy problem. No one threatened Marks or Petitioner in order to get the Petitioner to move for a mistrial.
(g) Judge Johnson declared a mistrial because she agreed with the Petitioner that he was not getting a fair trial because of Graham's actions. She had noted that the discord between Graham and the district attorney was prejudicing the jury against the Petitioner. She had also noticed some antagonism between Graham and the Petitioner.
(h) The prosecution did not gain any strategic or tactical benefit from the mistrial. No evidence was presented at the third trial that was not available at the mistrial. The jury selected for the second trial appeared to District Attorney Patton to have been as good a jury as was empaneled to hear the third trial.
(i) At his second trial, the Petitioner repeatedly asked for a mistrial because he did not think he could get a fair trial given trial counsel's conduct. (M.R. 426, 438, 492) He recited a list of grievances against trial counsel, centering primarily on his antagonism of the court and his failure to meet with his client. (M.R. 428-430, 440) He perceived the fault as lying with his trial counsel. (M.R. 428-429) From the transcript and the testimony at the coram nobis hearing, the Petitioner knowingly and voluntarily asked the Court to declare a mistrial because he did not think he was getting a fair trial.
(j) The mistrial of Petitioner's second trial was declared at the request of Petitioner and concurred in by both Marks and Graham. Petitioner's request was based on his justified concern that he was not getting a fair trial. There is no evidence to show that Petitioner was misled into requesting a mistrial or that the trial court or prosecution maneuvered Petitioner into requesting a mistrial to gain an advantage. Petitioner is not entitled to relief on this claim.
 CONCLUSION
The Court having duly considered Petitioner's claims and found as set out above, finds that he is not entitled to relief on any of the claims asserted in the Petition for a Writ of Error Coram Nobis. Judgment will be entered in accordance with the foregoing findings of fact and conclusions of law.
 ORDER
The Court having considered the Petition for a Writ of Error Coram Nobis as set out in its memorandum opinion, it is hereby ORDERED, ADJUDGED and DECREED that the Petition is DENIED.
July 16, 1985
 /s/ Joseph A. Colquitt
Joseph A. Colquitt Circuit Judge
[1] "R" refers to pages in the transcript of Petitioner's third trial.
[2] "F.R." refers to pages in the transcript of Petitioner's first trial.
[3] "M.R." refers to pages in the transcript of Petitioner's second trial.