**David L. COULTER, Petitioner–Appellant,**

v.

**Tommy HERRING, Commissioner, Alabama Department of Corrections; W.P. Johnson, Warden, Holman Unit, Respondents–Appellees.**

No. 91–7131.

United States Court of Appeals, Eleventh Circuit.

July 24, 1995.

Ronald J. Tabak, New York City, for appellant.

John Gibbs, Kenneth S. Nunnelley, Andy S. Poole, Asst. Attys. Gen., Montgomery, AL, for appellees.

Before HATCHETT, ANDERSON and COX, Circuit Judges.

PER CURIAM:

In this capital case appeal, we affirm the district court's denial of habeas corpus relief.

## BACKGROUND

In October 1978, appellant, David L. Coulter, was convicted of capital murder in Colbert County, Alabama.[1] The trial judge sentenced Coulter to death. The Alabama Court of Criminal Appeals reversed Coulter's conviction "on the authority of *Beck v. State,* 396 So.2d 645 (Ala.1981)." *Coulter v. State,* 396 So.2d 1098, 1098 (Ala.Crim.App.1981). Coulter's second trial commenced in October 1981, but ended in a mistrial. Bryce Graham and James Marks represented Coulter during his second trial. Judge Inge Johnson presided over the trial.

In January 1982, Coulter's third Alabama trial ended in his conviction for capital murder. Carl Stolsworth and James Marks represented Coulter during this trial, with Judge Johnson again presiding.[2] After the sentencing hearing, Judge Johnson imposed a death sentence. Stolsworth and William Underwood served as Coulter's appellate counsel.[3] Coulter's conviction and sentence were affirmed on appeal. *Coulter v. State,* 438 So.2d 336 (Ala.Crim.App.1982); *Ex parte Coulter,* 438 So.2d 352 (Ala.1983).

In 1984, Coulter filed a petition for writ of error coram nobis. In July 1985, after conducting an evidentiary hearing, the Circuit Court of Tuscaloosa County denied coram nobis relief. The Alabama Court of Criminal Appeals affirmed the decision, adopting the coram nobis court's opinion as its own. *Coulter v. State,* 494 So.2d 895, 898 (Ala. Crim.App.1986). The Alabama Supreme Court denied certiorari on September 26, 1986.

In December 1986, Coulter filed the present habeas corpus petition, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Northern District of Alabama, asserting fourteen claims for relief. Coulter amended the petition in October 1988 to add a fifteenth claim. In March 1989, the magistrate judge issued a report recommending that the district court deny relief on all of Coulter's claims. In June 1989, Coulter moved to amend the petition to add a claim challenging the use of his Georgia convictions at his Alabama sentencing proceeding.[4] In August 1989, the district court entered an

---

1. The Alabama Court of Criminal Appeals sets forth the facts of the crime, committed on September 28, 1977, in *Coulter v. State,* 438 So.2d 336, 338–342 (Ala.Crim.App.1982). Coulter was also convicted in Putnam County, Georgia on December 1, 1977, for a murder and attempted robbery committed on September 29, 1977.

2. James Patton served as the prosecutor in all three of Coulter's trials.

3. Stolsworth died during the pendency of the appeal.

4. This motion came in response to the Supreme Court's decision in *Amadeo v. Zant,* 486 U.S. 214, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988). That decision, which concerned Coulter's codefendant, Anthony Amadeo, overturned this court's reversal of a district court decision granting Amadeo habeas corpus relief because the 1977 master jury lists in Putnam County underrepre-

order adopting the report of the magistrate judge. The district court's order also conditionally granted Coulter's June 1989 motion to amend the petition, and withheld final judgment pending a hearing on that motion.

In January 1991, after holding "this action in abeyance for over a year awaiting a resolution" of Coulter's claim that his Georgia convictions were unconstitutional, the district court entered a Memorandum of Decision and Final Judgment. In that Memorandum, the district court reaffirmed its ruling denying relief on all claims presented in the petition, and denied, on ripeness grounds, the June 1989 motion to amend. In February 1991, Coulter filed a timely notice of appeal. The district court granted a certificate of probable cause authorizing appeal in August 1991.

In September 1991, the Superior Court of Putnam County, Georgia entered an order vacating Coulter's Georgia convictions.[5] On October 16, 1991, Coulter filed a motion to amend his petition, or, in the alternative, to reopen the district court's judgment. Coulter also moved this court to hold his appeal in abeyance pending the district court's disposition of his October 16, 1991 motion. This court granted that motion.

On October 15, 1993, the district court awarded Coulter habeas corpus relief with respect to his sentence "on the ground that the [Alabama] jury improperly considered the subsequently invalidated Georgia murder conviction as an aggravating circumstance in the sentencing phase of petitioner's trial." The district court ordered that Alabama provide Coulter with a new sentencing hearing, but stayed the effect of that ruling pending this court's disposition of his appeal.[6]

We now consider Coulter's challenges to his conviction.

## CONTENTIONS

Coulter presses three claims on appeal. First, he contends that his lawyers provided him with ineffective assistance of counsel in connection with plea bargain negotiations. Second, he argues that his third trial constituted double jeopardy because the trial judge in his second trial solicited, unbeknownst to him, the successful mistrial motion. Third, Coulter asserts that the admission of evidence concerning an uncharged and unrelated robbery in Mississippi violated his due process rights.

The state responds to Coulter's contentions as follows. First, Coulter's rejection of the state's plea offer of life without parole was not linked to any ineffectiveness on the part of his lawyers. Second, Coulter failed to raise his double jeopardy claim at his third trial or on direct appeal; thus, he has procedurally defaulted this claim. Third, Coulter failed to raise his evidentiary challenge on direct appeal; therefore, he has also procedurally defaulted this claim.

## DISCUSSION

### A. Ineffective Assistance of Counsel

Prior to his second and third trials, the state offered Coulter the opportunity to plead guilty and receive a sentence of life without parole. Prior to his third trial, Coulter's lawyer informed the state that Coulter would plead guilty in exchange for a life sentence with the possibility of parole. The state rejected Coulter's counteroffer.

Coulter argues that, in evaluating the state's offer, his lawyers did not provide him with accurate information regarding the possible sentences he might face if he stood trial. He asserts that because the homicide occurred during the course of a robbery, a jury

---

sented women and African–Americans, thus depriving Amadeo of his equal protection rights. *Amadeo,* 486 U.S. at 219–21, 108 S.Ct. at 1775–76.

5. This order was not appealed. A subsequent indictment of Coulter in Georgia was dismissed

with prejudice in 1993; that ruling was also not appealed.

6. In July 1994, the parties filed a joint statement with this court stating that appellees had decided not to appeal the district court's order setting aside Coulter's sentence.

could only convict him of either: (1) capital murder, which offers two possible sentences, death and life without parole, or (2) felony murder, which carries a sentence of life with the possibility of parole. Coulter contends that his lawyers did not inform him that these were the only offenses for which he could be convicted. As a result, he maintained the erroneous belief that he also had the potential to be convicted of second-degree murder or manslaughter. Thus, he believed that his potential sentencing options included: (1) death; (2) life without parole; (3) life with the possibility of parole; (4) a second-degree murder sentence of perhaps twenty years; and (5) a manslaughter sentence of perhaps ten years. Coulter states that had his lawyers given him accurate information regarding his sentencing options, he would not have erroneously believed that he could have received the fourth and fifth sentencing options. Furthermore, Coulter contends that had his lawyers informed him that only the first three sentencing options existed, he likely would have accepted the state's offer and pleaded guilty.

> Whether counsel has rendered adequate assistance is a mixed question of fact and law requiring application of legal principles to the historical facts of the case. The state court's conclusion on this mixed question is not entitled to a presumption of correctness under 28 U.S.C.A. § 2254(d).... However, the state court's findings of historical fact on the issue are entitled to a presumption of correctness.

*Collins v. Francis,* 728 F.2d 1322, 1346 (11th Cir.) (citations omitted), *cert. denied,* 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984). The coram nobis court made the following relevant findings of historical fact on this issue:

> (c) Petitioner told Carl Stolsworth and James Marks, the first time he met with them, that he wanted to receive a sentence which would allow him, someday, to get out of prison. Before his third trial, Petitioner told Stolsworth that he wanted to "roll the

dice" on getting a sentence less than life without parole.

> (d) Petitioner testified at the coram nobis hearing that he did not know whether he would have accepted the life without parole plea offer if he had been told that the least sentence he would receive was life and that second degree murder and manslaughter were not available lesser included offenses in his case. He further displayed considerable confusion as to how he had been misled by his trial counsel concerning lesser included offenses....

> (e) No one ever told Petitioner, in the presence of James Marks, to reject the life without parole plea offer. Both Bryce Graham and Carl Stolsworth told Petitioner that he should consider the plea offer. Petitioner, contrary to the allegation in his Petition, denied discussing the life without parole plea offer with Stolsworth. Marks' testimony, supported by Stolsworth's use of the offer at trial, is more credible and the court finds that Petitioner's testimony is not credible.

> (f) James A. Patton would not have accepted a plea to a lesser punishment than life without parole.

> (g) Petitioner was informed that second degree murder and manslaughter would not be lesser included offenses in his case before the life without parole offer was withdrawn. Before Petitioner's mistrial, Judge Johnson informed his then attorney Bryce Graham, in Petitioner's presence, that the lesser included offenses were first degree murder, and, possibly, robbery but not manslaughter.

*Coulter,* 494 So.2d at 902. The record supports these findings of fact, and thus we accord them the presumption of correctness under 28 U.S.C. § 2254(d). *See Fike v. James,* 833 F.2d 1503, 1506 (11th Cir.1987).

█ In *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985), the Supreme Court held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective

assistance of counsel." [7] To succeed on such a claim, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In addition, the defendant must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill,* 474 U.S. at 59, 106 S.Ct. at 370. In other words, in this instance, Coulter "must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded guilty and would [not] have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. at 370.

█ In assessing this claim, the district court found that Coulter failed to establish any prejudice stemming from his lawyers' alleged ineffective performance. We agree. Though Coulter evidenced, through his counteroffer to the state, a willingness to enter into a plea agreement, he has offered no further proof to show that he would have accepted the state's plea offer of life without parole absent his lawyers' alleged errors. As outlined above, Coulter testified at the coram nobis hearing that he did not know if he would have accepted the state's offer had he known he could only be convicted of capital murder and felony murder:

Q. Well, you filed a complaint about the—a complaint which includes the claim about the life without parole offer, that you were improperly advised of something; that you would have taken the life without parole offer, I believe it said, if you had known the least sentence you could get

was life. Is that what you are complaining about?

A. If I understand your question correctly about him misleading me would be he didn't tell me that the least I could get was felony murder, that I didn't have but three possible sentences all around, where I was looking at there was a possibility of four or five different sentences I could get.

Q. And you are saying that kept you from taking the life without parole offer?

A. Possibly, I don't know.

Q. It affected your decision?

A. I don't know. I don't know how I would have felt at that time had I known.

Accordingly, Coulter has not made the requisite showing that a reasonable probability exists that, but for his lawyers' errors, he would have accepted the plea offer and abstained from going to trial. Thus, we reject Coulter's claim.[8]

B. Double Jeopardy

█ During the second trial, Judge Johnson, concerned with Graham's conduct and lack of preparation, held an off-the-record conference with Marks and Patton. Coulter alleges that during this conference Judge Johnson asked Marks to induce Coulter to move for a mistrial. He also contends that during the conference Judge Johnson discussed declaring a mistrial on her own motion, and that, had she declared a mistrial, the Double Jeopardy Clause would have barred a retrial. Coulter asserts that Marks did not communicate this information to him, thus rendering his consent to the mistrial motion meaningless. As a result, Coulter argues that his third trial constituted a violation of double jeopardy.

---

7. In *Hill,* the defendant accepted a guilty plea offer. *Hill,* 474 U.S. at 53, 106 S.Ct. at 367. We believe that *Hill* also applies when a defendant decided not to accept a plea offer. *Cf. Beckham v. Wainwright,* 639 F.2d 262, 267 (5th Cir. Unit B Mar. 1981) (applying ineffective assistance of counsel analysis where defendant withdrew negotiated plea and stood trial).

In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court

adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

8. "[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069.

We note that Coulter's contentions on this claim conflict with the findings of the coram nobis court. After hearing testimony on this issue from Judge Johnson, Marks, Graham, Patton, and Underwood, the coram nobis court found that:

> Marks brought up the subject of a mistrial [at the conference with Judge Johnson and Patton].... No one told Marks that he needed to get Petitioner to move for the mistrial in order to avoid any double jeopardy problem. No one threatened Marks or Petitioner in order to get the Petitioner to move for a mistrial.
>
> . . . .
>
> ... The mistrial of Petitioner's second trial was declared at the request of Petitioner and concurred in by both Marks and Graham. Petitioner's request was based on his justified concern that he was not getting a fair trial. There is no evidence to show that Petitioner was misled into requesting a mistrial or that the trial court or prosecution maneuvered Petitioner into requesting a mistrial to gain an advantage....

*Coulter*, 494 So.2d at 910.[9] The record supports the coram nobis court's findings; therefore, we presume them to be correct. *See* 28 U.S.C. § 2254(d); *Fike*, 833 F.2d at 1506.

Relying on state-law grounds, the Alabama Court of Criminal Appeals held that "[t]his claim is barred from coram nobis review because coram nobis will not lie to review claims that could have been raised at trial and on direct appeal but were not." *Coulter*, 494 So.2d at 909.[10]

It is settled law that a state prisoner may not obtain federal habeas corpus relief on a claim that the state courts refused to hear because the petitioner did not raise his claim seasonably at trial or on direct appeal from his conviction, unless the petitioner shows cause for not raising the claim and resulting prejudice.

*Presnell v. Kemp*, 835 F.2d 1567, 1567–68 (11th Cir.1988), *cert. denied*, 488 U.S. 1050, 109 S.Ct. 882, 102 L.Ed.2d 1004 (1989); *see also Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

Coulter argues that because the conference among Judge Johnson, Marks, and Patton was conducted off-the-record, a review of the transcript of his second trial does not reveal the basis for his double jeopardy claim, thus providing cause for his failure to raise the claim at his third trial or on direct appeal. Furthermore, he asserts that raising this claim presented a conflict for Marks because the claim revealed a deficiency in his representation of Coulter during the second trial. Coulter believes that this conflict also constitutes cause.

■ We reject Coulter's contention that he has established cause to excuse his procedural default. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). The transcript of the second trial reveals that Coulter made his

---

**9.** Moreover, Judge Johnson, when asked whether she contemplated declaring a mistrial during the conference, testified: "No, ma'am. I can assure you I wasn't after three and a half days of trial."

**10.** The court also found, "as an alternative" holding, that Coulter was not entitled to relief on his double jeopardy claim. *Coulter*, 494 So.2d at 909–10. This alternative holding does not impact on our application of the procedural default rule. *See Hardin v. Black*, 845 F.2d 953, 958–59 (11th Cir.1988) ("Where ... the state court both applies a procedural bar and addresses the claims on the merits, federal habeas review is precluded only if the state court's adjudication on the merits is made in the alternative and does not constitute the principal basis for the state court's denial of relief on collateral challenge of the conviction."); *Hall v. Wainwright*, 733 F.2d 766, 777 (11th Cir.1984) ("A state court is entitled to express its views on federal constitutional issues without waiving its procedural default rules."), *cert. denied*, 471 U.S. 1107, 1111, 105 S.Ct. 2344, 2346, 85 L.Ed.2d 858, 862 (1985); *see also Tejada v. Dugger*, 941 F.2d 1551, 1557–58 (11th Cir.1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992).

motion for a mistrial directly after a recess. Thus, a reading of the record would have led Stolsworth and Underwood to inquire about the circumstances surrounding the motion. Moreover, given the coram nobis court's factual findings, we reject Coulter's contention that Marks possessed a conflict constituting cause as articulated in *Carrier.* Consequently, this claim was "reasonably available to counsel," and therefore no cause exists to excuse Coulter's failure to raise it in the state courts. *Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645. In addition, we do not find that our failure to consider this claim would result in a fundamental miscarriage of justice. Accordingly, we decline to address the merits of this claim.

### C. Admission of Evidence of Mississippi Robbery

 Coulter argues that the introduction of evidence during his third trial of an uncharged robbery, which he committed in Mississippi the day before the Alabama murder, violated his right to due process of law. Coulter's confession, which was read before the jury, stated, in relevant part: "On the way to Memphis on Tuesday morning we robbed a place near Michigan City on Highway 72 in Mississippi. It had one gas pump and it was also a store. We got $52.00 off of it." Relying on state law, the Alabama Court of Criminal Appeals held that this claim was barred from coram nobis review because Coulter had abandoned it on appeal.[11] *Coulter,* 494 So.2d at 906. Therefore, "federal habeas review of th[is] claim[ ] is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565.

Coulter contends that his attorneys rendered ineffective assistance of counsel in failing to raise this issue on appeal. "In order to constitute cause sufficient to overcome procedural default, a counsel's performance must be *constitutionally* ineffective under the standards of *Strickland v. Washington....*" *Jackson v. Herring,* 42 F.3d 1350, 1358 (11th Cir.1995). Coulter, however, has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Thus, we reject his contention that his appellate lawyers' failure to raise this issue on appeal constitutes ineffective assistance of counsel, and therefore serves as cause to excuse his procedural default.

Coulter also asserts that this court's refusal to address this claim would result in a fundamental miscarriage of justice. The Supreme Court has stated that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649. Coulter has made no showing that he is actually innocent of the crime for which he was convicted. Consequently, we decline to address the merits of Coulter's claim for habeas corpus relief on this issue.

### CONCLUSION

For the foregoing reasons, we affirm the district court's denial of habeas corpus relief as to Coulter's challenges to his conviction. We remand the case for further proceedings consistent with the district court's October 15, 1993 order.

**AFFIRMED AND REMANDED.**

---

11. "[A]s an alternative" holding, the court also denied relief on the merits of the claim. *Coulter,*

494 So.2d at 906–07.